Argued and submitted October 31, 2002, reversed and remanded for new trial
May 8, 2003

# STATE OF OREGON,
*Respondent,*

*v.*

# MICHELLE LEE SWANSON,
*Appellant.*

## C993911CR; A113676

68 P3d 265

Susan F. Drake, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

**WOLLHEIM, J.**

Defendant appeals her convictions for possession and delivery of methamphetamine, a controlled substance. ORS 475.992(4)(b). Before trial, she moved to suppress evidence resulting from an inventory of her vehicle, including all derivative evidence. She assigns error to the trial court's denial of that motion. We reverse and remand.

The relevant facts are not in dispute. Officer Passadore, who conducted the inventory, testified at the suppression hearing. Passadore testified that he stopped defendant's vehicle for various traffic infractions.[1] As Passadore approached the vehicle, he noticed defendant reaching in between the driver's and passenger's seats. Upon request, defendant could not produce her driver's license or proof of insurance. Passadore learned from the dispatcher that defendant's license was suspended and that she was on probation for possession of a controlled substance. Passadore then asked defendant for permission to search for documents that would reveal defendant's identity. Defendant refused.

Passadore told defendant that he was going to cite her for driving while suspended and that he would impound the vehicle after he inventoried it for valuables. Defendant became upset because she did not want him to search the vehicle. Passadore explained to defendant that she and the passenger could remove personal items from the vehicle before his inventory, but neither did so.

Passadore looked between the driver's and passenger's seats, and he found what he testified was "like a purse accessory kit * * * just this kind of like a make-up-type purse accessory kit." Passadore opened the container. When Passadore looked inside the kit, he found a glass pipe that contained residue, a Ziploc bag with residue, a cigarette box that had a Ziploc bag inside of it, and, inside of another box, scales with residue. He also found one medium Ziploc bag containing six smaller Ziploc bags. Two of the smaller bags contained what appeared to be methamphetamine. One bag contained marijuana and two other bags were burned and

---

[1] Defendant does not challenge the validity of the traffic stop.

appeared to contain methamphetamine residue. Based on this discovery, Passadore arrested defendant.

Continuing with the inventory, Passadore found, directly behind the driver's seat, a large Ziploc bag that contained other large Ziploc bags and a metal box that was not locked. Passadore opened the lock box. Inside the lock box, he found a small orange Ziploc bag "containing a brown crystal, moist residue," four glass pipes, three syringes, one small green Ziploc bag containing what appeared to be methamphetamine, rolling papers, two mirrors containing residue, four cut straws with residue, a razor blade, and an empty pill capsule.

Passadore then read defendant her *Miranda* rights and defendant stated that she understood them. Passadore asked defendant whom the red purse accessory kit belonged to and defendant stated, "It's all mine, everything in the red bag." When Passadore asked defendant what was in the red bag, she said, "It's crystal." When asked who the scales belonged to defendant said, "The scales are mine. I've had them for awhile." When Passadore asked defendant when the scales were last used "to package," defendant stated, "I last packaged drugs with the scales a couple days ago." Defendant also said, "I'm not a big time dealer" and "I'm not going to tell on anyone." Passadore did not remember asking defendant any questions about the metal lock box.

Passadore had three of the Ziploc bags tested for controlled substances. The two Ziploc bags found in the red purse accessory kit tested positive for methamphetamine and the orange Ziploc bag from the metal lock box tested negative for controlled substances.

Defendant challenges the validity of the inventory, arguing that the opening of the red container and the metal lock box was not permissible under the municipal inventory ordinance or the police department's general order.

Tigard Municipal Code (TMC) 2.30.070(b)(4) provides that "closed opaque containers shall not be opened, but rather shall be inventoried consistent with their outward appearances only. *Purses, wallets, fanny packs, backpacks, and other similar items designed to contain valuables* shall be

opened and their contents shall be inventoried."[2] (Emphasis added.)

Therefore, an officer must open and inventory the contents of closed opaque containers if those containers are both designed for carrying valuables and similar to the listed items. However, an officer shall neither open nor inventory the contents of closed opaque containers that are not both designed for carrying valuables and similar to the listed items.

In *State v. Atkinson*, 298 Or 1, 4, 688 P2d 832 (1984), the Supreme Court addressed inventory policies:

> "The overall principle repeatedly stated in this court and the Supreme Court of the United States is that except in a few carefully defined classes of cases, a search of private property without valid consent is unreasonable unless it has been authorized by a valid search warrant."

(Internal quotation marks omitted.) Pursuant to the federal constitution, noninvestigatory inventories of impounded vehicles are one of the exceptions to the search warrant requirement. The court in *Atkinson* held that, under Article I, section 9, of the Oregon Constitution, "a policy may be adopted and uniformly administered to inventory the contents of ordinary vehicles in order to protect private property and for ancillary purposes * * *." *Id.* at 7. The court additionally held that, "[i]f * * * the inventory deviated from the established policy or procedures of the particular law enforcement agency, the inventory should be deemed invalid." *Id.* at 10.[3]

At oral argument, the state essentially conceded that the unlocked lock box is not at issue in this case because the

---

[2] The Tigard police department's General Order #12(C)(2)(d) similarly provides that "closed opaque containers shall not be opened, but rather shall be inventoried consistent with their outward appearances only. *Purses, wallets, fanny packs, backpacks, briefcases and other similar items designed to contain valuables* shall be opened and their contents shall be inventoried." (Emphasis added.)

[3] The parties do not dispute that it is constitutionally permissible, under some circumstances, for inventory policies to permit the opening of certain closed containers. *See, e.g., State v. Mundt/Fincher*, 98 Or App 407, 780 P2d 234 (1989), *rev den*, 308 Or 660 (1989). The only question presented here concerns whether the policy in question permits the opening of the containers.

only evidence that tested positive for controlled substances came from the red purse accessory kit and because the unlocked lock box does not fall within the terms of the inventory policy. That is so because, although the lock box is, unquestionably, "designed to contain valuables," it is not "similar" to a wallet, purse, coin purse, fanny pack, backpack or briefcase, other than the fact that it, like the items listed, is designed to hold valuables. The state acknowledged that reading the ordinance to include lock boxes would essentially delete the word "similar" from the ordinance. In other words, if the inventory ordinance authorized the inventory of all items "designed to contain valuables" it could have said so without the insertion of the word "similar." Otherwise, "similar" would be redundant. We agree, that, beyond the fact that it is designed to contain valuables, a lock box is not "similar" to the other listed items. The contents of the lock box should have been suppressed.

By far the more difficult issue in this case concerns the red purse accessory. The standard of review is set out in *State v. Rutledge*, 162 Or App 301, 305-06, 986 P2d 99 (1999):

> "The physical characteristics of a container and the circumstances under which a container is found constitute historical facts. Historical facts, as found by a trial court, are binding on review if there is evidence in the record to support them. If findings are not made on all such issues, and there is evidence from which such facts could be decided in more than one way, then we will presume that the facts were decided in a manner consistent with the trial court's denial of the motion to suppress. Whether the facts support a determination that the officers' inventory was conducted pursuant to the ordinance and ultimately satisfy the constitutional requirements for a warrantless search is a question of law."

(Citations omitted.)

At the suppression hearing, the trial court ruled that the "purse accessory * * * is a container designed to contain valuables under the meaning of the ordinance as it's written. Doesn't mean it's always containing valuables. Has to do with apparently primary purpose and design." When defense counsel asked the court what valuables the container would be designed to contain, the court stated:

"Money, jewelry, watches, other accessories that women may carry in their purse that they want to keep separated from other contents of the purse that are of some value other than used Kleenexes, postage stamps, sunglasses, pencils, combs, cell phones, scissors, bandaids, such other items that are frequently kept in there. I haven't inventoried a purse in some time * * * but certainly to be kept separate from, because of some inherent value, from the other contents of a purse * * *."

Defendant argues that the red container does not meet the requirements for opening a closed opaque container under the relevant TMC provision and police department order because the red container is not "designed for carrying valuables," nor is it similar "to a wallet, purse, coin purse, fanny pack, backpack or briefcase." Defendant contends that, "[b]ecause the state failed to introduce the container, the trial court could not have made any implicit findings based on first-hand observation. Rather, it had to base its findings solely on Passadore's testimony." The state responds that, even if the container was manufactured to contain makeup, "that does not mean that it cannot objectively appear to be designed to carry valuables within the meaning of this policy." Defendant argues that, "Passadore did not testify that the container was designed to carry valuables. At best, he testified that the container was designed to carry makeup."

Admittedly, our case law does not draw a bright line to distinguish between containers that may be opened during an inventory search from containers that may not be opened during an inventory. Rather, the cases in this area are extremely fact specific and the city ordinances governing inventories in each case vary in language and in scope.[4]

---

[4] *See, e.g.*, *Mundt/Fincher*, 98 Or App at 412 (holding that wallets and purses may be inventoried because they are "primarily intended to be used to store valuables"); *State v. Bean*, 150 Or App 223, 229, 946 P2d 292 (1997), *rev den*, 327 Or 448 (1998) (holding that a fanny pack was lawfully inventoried where the relevant city ordinance provided that fanny packs could be inventoried); *State v. Johnson*, 153 Or App 535, 540, 958 P2d 887, *rev den*, 327 Or 554 (1998) (holding that a briefcase and a coin purse are "typically used to store valuables" because, "when viewed objectively, [they] are containers in which a reasonable person could expect to find valuables"); *Rutledge*, 162 Or App at 308 (holding that the inventory was lawful where the relevant ordinance allowed the inventory of coin purses and where the officer believed that the container at issue was a coin purse, even though the container was actually a shaving kit). Defendant does not challenge, and we do not call into question, the correctness of any of those holdings.

In this case, the relevant TMC provision and police department order contain two requirements that must be met before a closed opaque container can be inventoried: (1) the container must be *designed* for carrying valuables, and (2) the container must be similar to wallets, purses, coin purses, fanny packs, backpacks, and briefcases. The record in this case is not sufficient to establish that the inventory was lawful under those requirements.

Passadore did not testify that the red container appeared to be *designed* for carrying valuables or even that he expected to find valuables when he opened the container. He described it as "kind of like a make-up-type purse accessory kit." Passadore testified that he has come into contact with those type of containers before and that he has found both valuable and nonvaluable items in them. Further, Passadore's testimony provided no basis for concluding that that type of containers is, in fact, designed for carrying valuables. The fact that Passadore had previously found both valuable and nonvaluable items in the type of container at issue here says little, by itself, about what the container was *designed* to carry.

Additionally, Passadore did not testify that the container was, or appeared to be, similar to a wallet, purse, coin purse, briefcase, fanny pack, backpack, or other item designed to contain valuables. In fact, Passadore testified that the item was similar to a "cosmetic bag." When asked on redirect whether the item was "something that would go as a set as part of a purse," Passadore answered, "This item didn't appear to be like a set. It looked like something that would maybe be purchased afterwards." The applicable TMC provision and police department order do not list a "purse accessory kit" or a "make-up-type purse accessory kit" or a "cosmetic bag" as being a container that may be lawfully inventoried.

The trial court's conclusion, apparently based on the judge's personal understanding that women often do use such containers to carry valuables, begs the essential question of whether the container was designed to do so. Without the container in evidence and based solely on Passadore's description of it, the trial court lacked a basis for making an

implicit finding that the container was "designed to contain valuables."

For the above reasons, the evidence should have been suppressed. Accordingly, the trial court erred in denying defendant's motion to suppress the contents of the red container, including oral evidence derived as a result of that unlawful search.

Reversed and remanded for new trial.