Argued and submitted September 29, 2008, affirmed July 1, 2009

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSHUA ALAN BROWN,
*Defendant-Appellant.*

Washington County Circuit Court
C063182CR; A135045

211 P3d 315

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant appeals a judgment of conviction for two counts of identity theft. ORS 165.800. He assigns error to the denial of his motion to suppress evidence discovered on his person during a traffic stop. The trial court denied the motion on the ground that the evidence was discovered lawfully during an inventory of defendant's personal effects in conjunction with his arrest. Defendant contends that, because no inventory policy actually was received into evidence, the trial court erred in denying his motion. We affirm.

Washington County Sheriff's Deputy Bowman stopped a car because of a malfunctioning light. Defendant was a passenger in the front seat. There was also a female passenger in the back seat. As Bowman approached the car, defendant lit a cigarette. Bowman spoke first with the driver, whom he recognized from a previous encounter and who he knew was suspected of breaking into cars in the area. Defendant, meanwhile, appeared very nervous; his hands were shaking and he was sweating. Bowman observed that there were two CD cases, a day planner, and a tan purse at defendant's feet. The woman in the back seat was also holding a purse. Bowman believed that the items at defendant's feet might have been stolen during car burglaries.

Deputy Akin arrived at the scene to assist Bowman. Akin asked defendant his name. Defendant gave a name that appeared to consist of three first names; he could not provide any identification. Akin radioed dispatch for a warrants check of the name.

While that was occurring, defendant "flicked a large burning chunk of the cigarette onto the public roadway." Bowman informed defendant that he was under arrest for the crime of throwing burning material. ORS 476.715. Bowman ordered defendant out of the car, handcuffed him, and advised him of his *Miranda* rights. Defendant did not physically resist. Bowman did not see a weapon or have any reason to believe that defendant was armed or dangerous.

After arresting defendant, Bowman searched defendant's pockets. He later recalled at the suppression hearing that he did so as a search incident to arrest and because he

was "looking for means of escape and officer safety." Bowman discovered a credit card activation notice, a bank card, and an insurance card, none of which was in the name that defendant had provided. Bowman also found a wallet, which he opened. The wallet contained two checks, neither of which appeared to belong to defendant. After removing the items from defendant's pockets, Bowman placed defendant in the back seat of his patrol car.

Defendant ultimately was charged with four counts of identity theft, based on the evidence obtained from the search of his pockets and the wallet. He moved to suppress the evidence discovered by Bowman on the grounds that, when Bowman conducted the warrants check, he stopped defendant without reasonable suspicion that defendant had committed a crime; that Bowman arrested defendant without probable cause to believe that he had committed a crime; and that, even assuming that Bowman lawfully arrested defendant, Bowman exceeded the permissible scope of a search incident to arrest and had not articulated any specific facts supporting a search relating to officer safety or to prevent escape.

The trial court granted defendant's motion, in part. The court determined that Bowman's observation of the CD cases and other items near defendant's feet did not give rise to reasonable suspicion of a crime. As a result, the trial court suppressed the statements made by defendant before he threw burning material from the car. The trial court denied the motion, however, as to the items discovered during the subsequent search of defendant's person. The court determined that, at that time, Bowman had probable cause to believe that defendant had committed the crime of throwing burning material, that Bowman intended to take defendant to the jail, and that, "[i]n taking someone into jail there is an inventory and, in taking an inventory, you take everything out of your pockets" as well as taking an inventory of the contents of a wallet "to know how much money is in it before you put it in a locker." (Emphasis added.)

Section 9.12.040 of the Washington County Code (WCC), in fact, does state that "[a] deputy will inventory the personal property in the possession of a person taken into

police custody" whenever the person "will be either placed in a secure police holding room or transported in the secure portion of a sheriff's office vehicle[.]" WCC 9.12.040(A)(1). The code further provides that the inventory includes the removal "of personal property from the clothing" of the arrestee and an examination of the contents of closed containers "designed for carrying money and/or small valuables on or about the person. This includes, but is not limited to, closed purses, closed coin purses, closed wallets and closed fanny packs." WCC 9.12.040(C)(3). Up to that point, however, no one had actually testified about the inventory ordinance. Nor had a copy of the ordinance itself been received into evidence.

Defendant asked for clarification of the court's ruling with respect to the items found during the search of his person. Specifically, defendant's counsel argued that the evidence was not subject to inevitable discovery because, in the context of an unclassified misdemeanor such as throwing burning material, the officers could simply have cited and released defendant and there was no evidence that they had instead decided to take him to jail. The court responded that Bowman's actions of handcuffing defendant and placing him in the patrol car effectively indicated that he intended to arrest defendant, not merely cite and release him. The following exchange ensued:

"[Defense Counsel]: And as far as the particular inventory that would be used here and whether that would allow search into pockets, is that just—is that a finding of law or how do we necessarily get there in searching the person's pockets before they're placed in the jail [as] to whether or not that regularly happens?

"[Prosecutor]: And the officer did testify about that it's policy to make this kind of—

"[Court]: He said it was policy.

"[Prosecutor]: —check before we take them to jail.

"[Court]: Yeah."

There was no other objection to or discussion of the trial court's ruling. As noted, defendant was convicted on two of the four counts.

On appeal, defendant contends that the trial court erred in denying his motion to suppress the evidence taken from his pockets and his wallet following his arrest. He asserts that the prosecutor and the court were both mistaken in believing that Bowman had testified that he conducted his search of defendant based on a Washington County policy and that, to the extent that the trial court in effect found that Bowman had testified regarding such a policy, we should regard ourselves as not bound by that unsupported finding. He argues that, accordingly, on the actual record in this case, the state failed to carry its burden of demonstrating that the search was conducted pursuant to a valid inventory policy.

In response, the state first contends that defendant failed to preserve his argument that the state adduced insufficient evidence of the existence of a valid Washington County inventory policy. According to the state, defendant did not challenge the prosecutor and the court's concededly erroneous understanding that the officer had testified that "it was policy." Nor did defendant object to the trial court apparently taking judicial notice of the inventory policy or otherwise object to the trial court's denial of his motion on the ground that there was insufficient evidence of the existence of the policy. The state argues that, had defendant done so, the trial court could have clarified its ruling, such as by expressly stating that it was taking judicial notice of the county's inventory ordinance.

On the merits, the state argues that the trial court properly denied defendant's motion because Bowman's inventory was consistent with the county inventory ordinance, of which, according to the state, the trial court implicitly took judicial notice. The state points out that the ordinance authorizes a deputy to inventory personal property in the possession of a person placed in a patrol car or otherwise taken into police custody, including the removal of all items from the person's clothing and the inventorying of the contents of closed containers that are "designed for carrying money and/or small valuables." The state argues that Bowman's testimony at the suppression hearing "essentially mirrored" that ordinance and that the trial court properly understood that the deputy was acting in conformity with it.

The state further argues that, even if the trial court did not in effect take judicial notice of the ordinance, this court can do so on appeal and requests that we do so—indeed, the state argues that we are required to do so, because the ordinance is one of the types of law expressly described in OEC 202 as "judicially noticed."[1] The state also argues that the inventory policy set out in WCC 9.12.040 meets the requirements for such a policy, including the requirement that it be enacted by a politically accountable body and that it allow an officer implementing it no discretion in carrying out the inventory.

Finally, the state argues that the items discovered in defendant's pockets during Bowman's lawful inventory provided the deputy probable cause to arrest defendant for the crime of identity theft, which in turn authorized Bowman to search defendant's wallet as a search incident to arrest.

We begin with the question of preservation. At the outset, it may be useful to note that defendant's contentions on appeal about the trial court's reliance on the county inventory ordinance entail two different legal issues. The first is whether it was proper for the trial court to rely on the ordinance at all, in the absence of actual evidence of its contents. The second is whether there was sufficient evidence in the record to establish that the officers acted in conformity with the inventory ordinance.

With that in mind, we turn to the adequacy of defendant's objections to the trial court. As we have noted, the trial court explained that its reason for denying defendant's motion to suppress was that "there is an inventory [in which] you take everything out of your pockets" and that the police inventory the contents of a person's wallet "to know how much money is in it." In response, defendant asked whether the court was making "a finding of law [sic] or how do we necessarily get there in searching the person's pockets before

---

[1] OEC 202 provides, in part:

"Law judicially noticed is defined as:

"* * * * *

"(7) An ordinance, comprehensive plan or enactment of any county or incorporated city in this state, or a right derived therefrom. * * *"

they're placed in jail [as] to whether or not that regularly happens?"

■       It is clear that defendant did not object to the trial court apparently taking judicial notice of the existence of the inventory policy. There was, as we have noted, actually no objection at all, much less any contention that would have reasonably put the court on notice that defendant was taking the position that, in relying on the existence of the county ordinance, the court would have been committing legal error. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (to preserve issue for appeal, party "must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct [it] immediately").[2]

■       What defendant did object to was the court's application of the inventory ordinance to the particular case at hand—specifically "how do we necessarily get there in searching the person's pockets before they're placed in jail [as] to whether or not that regularly happens?" The prosecutor certainly understood that to be defendant's objection, responding that "the officer did testify that it's policy to * * * check before we take them to jail." The trial court agreed, commenting that "[h]e said it was policy." As it turns out, both the prosecutor and the trial court were incorrect in their

---

[2] The absence of an objection to the trial court taking judicial notice of the inventory ordinance may reflect the fact that the objection would have met with no success. As noted, the Oregon Evidence Code specifically provides for taking judicial notice of county ordinances. OEC 202(7) (law that is judicially noticed includes "[a]n ordinance * * * or enactment of any county or incorporated city in this state"); *State v. Nelson*, 181 Or App 593, 600 n 2, 47 P3d 521, *rev den*, 335 Or 90 (2002) ("Unlike some inventory policies, the inventory policy at issue in the present case is an ordinance enacted by Clackamas County. OEC 202(7) specifically permits courts to take judicial notice of ordinances."); *see also* Laird C. Kirkpatrick, *Oregon Evidence* § 202.03 (5th ed 2007) ("[T]he primary significance of [OEC] 202 is to eliminate for the laws listed therein any requirement of pleading or proof to the jury."). Interestingly, even assuming that the trial court did not take judicial notice of the inventory ordinance, there is at least one case in which we have held that we may do so for the first time on appeal, and as an alternative basis for affirming a trial court's decision to deny a motion to suppress. *See State v. Willhite*, 110 Or App 567, 571, 571 n 4, 824 P2d 419 (1992) (taking judicial notice of city ordinance offered by state as alternative basis for validity of search of lawfully stopped vehicle; noting that, if trial court's decision was correct under that ordinance, reviewing court could affirm it).

recollections of the record in that regard. The remaining issues before us, then, are, first, the extent to which that matters and, second, whether, on the record before us, the trial court correctly concluded that the search of defendant's pockets and wallet was justified by the county inventory ordinance.

■■■ Under Article I, section 9, of the Oregon Constitution, police may inventory the contents of a lawfully impounded vehicle or the personal effects of a person being taken into police custody if a valid statute, ordinance, or policy authorizes them to do so. *State v. Perry*, 298 Or 21, 26-27, 688 P2d 827 (1984); *State v. Atkinson*, 298 Or 1, 4-9, 688 P2d 832 (1984).[3] The vehicle or person must be in lawful custody, and the inventory must be "conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory." *Atkinson*, 298 Or at 10. The state has the burden of demonstrating the lawfulness of an inventory. *State v. Marsh*, 78 Or App 290, 293, 716 P2d 261, *rev den*, 301 Or 320 (1986). In determining whether it has met that burden, we first consider whether the officers complied with the

---

[3] There is some inconsistency in how inventories are characterized for Article I, section 9, purposes. In *Atkinson*, for example, the Oregon Supreme Court described inventories as a category of "search" that is "reasonable" under Article I, section 9, if it complies with the conditions set out in that opinion. 298 Or at 8 ("If the responsible policy makers decide that protective reasons * * * justify prescribed procedures for inventorying the contents of an impounded vehicle, such a policy is not inherently 'unreasonable' within the meaning of Article I, section 9, if it complies with" the conditions described in the opinion.); *State v. Bostwick*, 226 Or App 57, 59, 202 P3d 259 (2009) (referring to "inventory search"); *State v. Martin*, 222 Or App 138, 145-46, 193 P3d 993 (2008), *rev den*, 345 Or 690 (2009) ("the government can authorize inventory searches, but those searches themselves must meet certain constitutionally based criteria"). Other cases assert that an inventory is not a "search" at all and is, instead, a completely different category of police conduct. *See, e.g., State v. Guerrero*, 214 Or App 14, 18, 162 P3d 1048 (2007) ("Oregon law has clearly distinguished between an inventory and a search."); *State v. Tyler*, 168 Or App 600, 602 n 2, 7 P3d 624 (2000) ("An inventory * * * is different in substance from a search[.]"). Whether an inventory is a search has some interesting implications. For example, if an inventory is not a "search," then how does Article I, section 9—which guarantees only that "searches" and "seizures" must not be unreasonable—serve as the source of the limitations on what constitutes a lawful inventory? Similarly, if an inventory is not a search, why does the state bear the burden of demonstrating the lawfulness of its conduct? Fortunately, we do not need to sort such matters out in this case, given the fact that the inventory at issue—however it is described—plainly satisfies the requirements of the law.

administrative policy; if they did so, we then consider whether the policy was constitutionally permissible under the standards set out in *Atkinson*. *State v. Guerrero*, 214 Or App 14, 19, 162 P3d 1048 (2007).

In this case, defendant first argues that the officer's search of his pockets and wallet cannot be regarded as a lawful inventory because the officer did not testify that he was acting pursuant to a lawfully adopted inventory. Defendant cites no case for the proposition that an inventory is unlawful unless an officer testifies that he or she subjectively believed that he or she was acting pursuant to an inventory policy, and we are aware of none. The Supreme Court's decision in *State v. Miller*, 345 Or 176, 191 P3d 651 (2008), would seem to suggest the contrary. In that case, the court upheld the lawfulness of an arrest even though the arresting officer failed to testify that, at the time, he had probable cause to make the arrest. The court explained that Article I, section 9, requires only that law enforcement officers reasonably believe that their conduct is justified, not that they be able to articulate a correct justification on which they actually relied. *Id*. at 186-88.

Defendant also contends that the state failed to demonstrate that Bowman conducted the search of his pockets and his wallet in conformance with the policy. As we have noted, however, WCC 9.12.040 authorizes the police to conduct inventories of the personal effects of persons taken into police custody. Specifically, it provides, in part:

"C.　Inventories of the personal property in the possession of such persons will be conducted according to the following procedures:

"1.　An inventory will occur prior to placing such person into a holding room or a police vehicle, whichever occurs first. * * *

"2.　To complete the inventory of the personal property in the possession of such person, the deputy will remove all items of personal property from the clothing worn by such person. In addition, the deputy will also remove all items of personal property from all open containers in the possession of such person.

"3. Inventories of the contents of a closed container in the possession of such person should only be conducted when:

"* * * * *

"c. The closed container is designed for carrying money and/or small valuables on or about the person. This includes, but is not limited to, closed purses, closed coin purses, closed wallets, and closed fanny packs."

In this case, Bowman inventoried items in defendant's personal possession—specifically, items in the pockets of the clothing that defendant was wearing. Bowman's inventory was thus consistent with WCC 9.12.040(C). Consistently with WCC 9.12.040(C)(1), the inventory took place before Bowman placed defendant in the police vehicle. Removal of items from the pockets of defendant's clothing was consistent with WCC 9.12.040(C)(2). Finally, because a wallet, albeit a closed container, is designed for carrying money, the inventory of the contents of the wallet found in defendant's back pocket was consistent with WCC 9.12.040(C)(3)(c). Bowman's inventory of defendant's person complied with the county's inventory policy.

■ We consider, finally, whether WCC 9.12.040 complies with the requirements of *Atkinson*. We conclude that it does: it was enacted by a politically accountable body and it confers no discretion on officers as to whether to conduct an inventory, when to do so, what items to inventory, or how. Nor is it invalid by reason of directing officers to open closed containers that are "designed for carrying money and/or small valuables." *See Guerrero*, 214 Or App at 19 (explaining that, although police generally must inventory property by its outward appearance and therefore may not open opaque closed containers in order to inventory their contents, there is an exception for closed containers designed to carry "money and/or small valuables").

Because we conclude that Bowman was authorized under WCC 9.12.040 to inventory the contents of defendant's wallet, we need not consider whether, as argued by the state, that conduct was lawful as a search incident to defendant's

arrest, following the discovery of other items in his pockets, for identity theft.

Affirmed.