Argued and submitted January 31, conviction on Count 2 reversed and remanded; remanded for resentencing; otherwise affirmed March 14, petition for review denied July 19, 2012 (352 Or 265)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAY LEE HANNA,
*Defendant-Appellant.*

Lane County Circuit Court
201001029; A145291

273 P3d 945

Jedediah Peterson, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Janet A. Klapstein, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals from his convictions, following a stipulated facts trial, for a variety of crimes, including one count each of unlawful possession of methamphetamine, ORS 475.894, and felon in possession of a firearm, ORS 166.270. Defendant contends that the trial court erred in denying his motion to suppress evidence discovered during an inventory of his pickup truck. As explained below, we conclude that officers' examination of the area under a tonneau cover[1] covering the bed of defendant's pickup exceeded the scope of the authorizing policy in that that area was neither a "trunk" nor an "external vehicle container[ ] attached to the vehicle." Thus, evidence obtained as a result of that unlawful search—specifically the shotgun on which the felon in possession charge was predicated—must be suppressed. Accordingly, we reverse defendant's conviction on that charge and remand, affirm defendant's other convictions, and remand the case for resentencing.

The facts material to the suppression ruling are as follows. A Eugene police officer, who was part of a team investigating property crimes, saw defendant put items that may have been stolen into the back of his Dodge pickup truck. The bed of the pickup truck was covered with a locked tonneau cover. Defendant drove off with two passengers, and police officers followed, stopping the pickup after defendant committed a traffic violation. The officers determined that defendant was driving without a valid license and that defendant had failed to comply with sex-offender reporting requirements. They then asked for defendant's consent to search the pickup. Defendant refused and was handcuffed and transported to the Lane County Jail. Meanwhile, both of defendant's passengers, neither of whom had a valid driver's license, left the scene.

---

[1] "Tonneau" is defined as "the rear seating compartment of an automobile ‹ of a limousine› ‹sports car ~ with removable canvas cover›." *Webster's Third New Int'l Dictionary* 2408 (unabridged ed 2002). The parties here appear to agree that a "tonneau cover," as used in this context, means a covering, made of hard plastic, fiberglass, or metal and with a locking mechanism, that is placed over the bed of a pickup and securely attached to the walls of the pickup. *See, e.g.,* http://en.wikipedia.org/wiki/Tonneau_cover (accessed Feb 29, 2012).

The police, after determining that the other registered owner of the pickup was not available to drive it away, decided to tow and impound the vehicle.[2] Officers then began to conduct an inventory of the pickup's contents pursuant to the Eugene Police Department's policy prescribing procedures for vehicle tows and impounds and related inventories. That policy, set out in Eugene Police Department General Order 602, provides, as pertinent:

### "F.  Inventory of impounded vehicles

"1.   Inventory the contents of all vehicles you impound. Do this to protect the property of the vehicle owner, to protect the City against claims regarding property loss or damage, and to protect the public and police personnel from potential danger. The inventory is not a search for evidence of a crime; however, seize any evidence or contraband located during the inventory.

"* * * * *

"3.   Thoroughly search the interior of the vehicle, including glove compartment(s) and under the seats. Search the trunk and any external vehicle container(s) attached to the vehicle (e.g., car-top carrier) if you can open them without damaging the vehicle or the container.

"4.   Do not open closed containers located either within the vehicle or any of the vehicle's compartments for inventory purposes except for the following, which shall be opened for inventory purposes: wallets, purses, coin purses, fanny packs, personal organizers, briefcases, or other closed containers designed for carrying money or small valuables, or closed containers which are designed for hazardous materials."

(Boldface and underscoring in original.)

Officers began by inventorying the contents of the pickup's cab and, in that area, they found a closed bag akin to a "large wallet or small camera case." The bag contained a

---

[2] Defendant had parked the vehicle, in response to the stop, on private property (the parking lot of a service station) posted with "No Trespassing" signs. Under the Eugene Police Department's policy governing tows and impounds (General Order 602), promulgated pursuant to Eugene City Code section 5.695, a tow and impound is properly initiated where, as pertinent here, the driver has been arrested and the vehicle "is not parked lawfully."

small glass pipe with a white residue that subsequent testing confirmed was methamphetamine, as well as a set of keys. An officer then used one of those keys to unlock the tonneau cover. In doing so, the officer believed that he was acting in accordance with paragraph 3 of the inventory procedures set out above. Under the tonneau cover, in the bed of the pickup, police discovered several items, including a shotgun.

Defendant was charged with, *inter alia*, unlawful possession of methamphetamine, ORS 475.894, based on the methamphetamine residue on the pipe found during the inventory of the pickup's cab, and felon in possession of a firearm, ORS 166.270, based on the shotgun found in the pickup's bed, under the tonneau cover.[3] Defendant moved to suppress all evidence obtained from his pickup truck, contending that the inventory policy did not authorize any examination of the space under the tonneau cover and, thus, the discovery of the items, including the shotgun, in that space was the product of an unlawful warrantless search. It does not appear that defendant advanced any independent or alternative argument pertaining particularly to the items, including the glass pipe with the methamphetamine residue, found in the closed bag in the pickup's cab area.

The trial court denied the motion to suppress, reasoning that "the inventory search was in compliance with the written policy, and was * * * nondiscretionary in nature." Defendant was then convicted, on stipulated facts, of each of the crimes charged.

On appeal, defendant reiterates his contentions that the inspection of the space under the tonneau cover exceeded the scope of the inventory policy. Specifically, defendant contends that

> "[t]he policy allows the police to search a trunk or an external vehicle container. However, the back of a pick-up truck is not a trunk, regardless of whether a tonneau cover is over it. Even when covered, the back of a truck is not an external vehicle container because it is not external to the vehicle, nor is it a container."

---

[3] Defendant was also charged with, and convicted of, felony failure to register as a sex offender and misdemeanor failure to register as a sex offender. ORS 181.599. He does not challenge either of those convictions.

Defendant further and alternatively contends that, "[i]f the terms in the policy can be stretched to include a tonneau-covered area," the policy affords officers impermissible discretion in its execution, violating the requisites of *State v. Atkinson*, 298 Or 1, 10, 688 P2d 832 (1984) (inventory, to be valid, must, *inter alia*, "be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory").[4]

We conclude that the inventory policy did not authorize examination of the area under the tonneau cover. That area—the pickup's bed, as enclosed by the pickup's walls and the locked tonneau cover—was neither a "trunk" nor an "external vehicle container[ ] attached to the vehicle." Accordingly, the trial court erred in denying defendant's motion to suppress to the extent that it pertained to items, including the shotgun, found in that area. Because that error concerns only defendant's conviction for felon in possession of a firearm (Count 2), we reverse and remand with respect to that charge and affirm defendant's other convictions.

Our analysis begins—and, indeed, ends—with the text of the inventory policy. That is, the lawfulness of the inspection depends on whether the area under the tonneau cover either was a "trunk" or constituted an "external vehicle container[ ] attached to the vehicle."

We begin with the ordinarily obligatory reference to the dictionary. A "trunk" is "the luggage compartment of an automobile." *Webster's Third New Int'l Dictionary* 2456 (unabridged ed 2002). An "automobile" is, in turn, defined as "a usu. 4-wheeled automotive vehicle designed for passenger transportation on streets and roadways * * *—called also *car* or esp. Brit. *motorcar*." *Id.* at 148 (emphasis in original).

---

[4] As before the trial court, defendant identifies no reason on appeal why, even if the inspection of the area under the tonneau cover constituted an unlawful search, suppression of the items found during the inventory of the pickup cab—which occurred before officers examined the area under the tonneau cover—should be suppressed. There is no assertion, for example, that the examination of the contents of the closed bag found in the pickup's cab exceeded the scope of the inventory policy or was derivative of officer discretion.

In this case, as in many, resort to dictionary definitions is unsatisfying. That is so because—putting aside such provocative abstractions as whether a pickup truck can ever be characterized as an "automobile" (as opposed to some other species of motor vehicle)—in automotive America, "trunk" has a single, indisputable meaning. The phrase "pop the trunk" universally summons a definitive, word-associative image: A "trunk" is the self-contained and separately accessible cargo compartment in the rear of a car. Bluntly: Cars have trunks, and pickups don't; pickups have beds, and cars don't.

To be sure, the combination of the bed of a pickup and a tonneau cover can create a space that performs the same *function* as a trunk, just as a backpack or fanny pack can perform the same function as, for example, a briefcase or a purse. But just as a fanny pack is not a purse, neither is a pickup bed covered with a tonneau cover a trunk. In that regard, we emphasize that the operative provision of the inventory policy at issue here is phrased precisely, in terms of a specific referent, "trunk," rather than more broadly and functionally—*e.g.*, "a trunk or any other area of a motor vehicle designed or created to contain items of personal property." Indeed, it is striking that other provisions of the Eugene inventory policy are phrased in such functional terms—*e.g.*, "wallets, purses, * * * or other closed containers designed for carrying money or small valuables"—but "trunk" is simply "trunk."

We turn, then, to "any *external* vehicle container(s) *attached* to the vehicle (e.g., car-top carrier)." (Emphasis added.) Reference to the dictionary would be gratuitous because, even granting that the combination of the tonneau cover and the bed and walls of the pickup created a "container," that "container" was not "external" or "attached" to the vehicle. Rather, parts of the vehicle itself were integral components of the "container"; that is, without the vehicle, there could be no "container." Nor is the tonneau cover, which *is* "attached to the vehicle," itself a "container" any more than the lid to a travel coffee mug is a container. Rather, the cover by itself is just that—a cover.

We thus conclude that, in examining the area under the tonneau cover, officers exceeded the scope of their authority under the inventory policy and, consequently, effected an unlawful search. Accordingly, the trial court erred in denying defendant's motion to suppress to the extent that it pertained to items, including the shotgun on which the felon in possession charge was predicated, found in that area. Accordingly, defendant's conviction for felon in possession of a firearm must be reversed and remanded.

Conviction on Count 2 reversed and remanded; remanded for resentencing; otherwise affirmed.