Argued and submitted April 30, convictions on Counts 1, 2, and 3 reversed and remanded; remanded for resentencing; otherwise affirmed June 13, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

EUGENIO ADOLFO CORDOVA,
*Defendant-Appellant.*

Marion County Circuit Court
10C40374; A145576

280 P3d 1036

Anne Fujita Munsey, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Samuel A. Kubernick, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

HASELTON, C. J.

## HASELTON, C. J.

Defendant, who was convicted after a stipulated facts trial of delivery of a controlled substance (methamphetamine), ORS 475.890 (Count 1), possession of a controlled substance (methamphetamine), ORS 475.894 (Count 2), felon in possession of a firearm, ORS 166.270 (Count 3), and attempting to elude a police officer, ORS 811.540 (Count 4), appeals. He assigns error to the denial of his motion to suppress evidence pertaining to delivery and possession of methamphetamine and possession of a firearm that officers found during an inventory of his car. Defendant asserts, *inter alia*, that the inventory was unlawful in that the predicate policy was unconstitutionally overbroad because it purported to authorize inspection of the contents of "[a]ll closed containers that *could* contain valuables." Marion County Sheriff's Office General Order ("General Order") 66.2.1 (emphasis added). As amplified below, we agree that the policy authorizing the inventory is invalid and, thus, that the trial court erred in denying the motion to suppress. Accordingly, although we affirm defendant's conviction for attempting to elude, which was based exclusively on evidence unrelated to the inventory, we reverse and remand with respect to defendant's other convictions and for resentencing.

The material facts are undisputed. Late one night, as he was driving on patrol, Marion County Sheriff Deputy Arnsmeier saw a car make two unsignaled turns. Arnsmeier turned on the overhead lights of his patrol car to initiate a traffic stop, and, as soon as he did so, he could see the sole occupant of the car, the driver—defendant—lean over to the front passenger side. Although Arnsmeier turned on his car's spotlight and siren, defendant did not stop but, instead, appeared to continue to manipulate or grab "something on the passenger side" while driving at 20 to 25 miles per hour. Defendant proceeded past a number of places where he could have pulled over, made several turns, and, after proceeding for somewhat less than a mile, pulled into a driveway and stopped.

In the ensuing encounter, which involved the use of "high risk" stop procedures, defendant was taken into custody and informed of his *Miranda* rights. After a records

check showed that defendant's driver's license was suspended, Arnsmeier determined that the car be towed and inventoried pursuant to General Order 66.2.1, relating to "towing, storage, and release of vehicles." That order states, generally, that "[t]he inventory of contents is for the purpose of protecting the owner's property" and further provides, as pertinent, as follows:

> "All closed containers that could contain valuables shall be opened and checked for valuables. Closed containers include, but are not limited to: purses, wallets, fanny packs, backpacks, suitcases, tool chests, gun cases/covers, briefcases."

Arnsmeier found a black backpack on the front passenger-side seat. Protruding from the backpack was a laptop computer and a small safe. Arnsmeier then opened the safe with a key that he had found under the driver's seat and found inside a handgun, portable scales, some empty plastic baggies, and a "nicked" and "dented" black can. The can "did not appear to be a real soda can," and Arnsmeier recognized it as the sort of "false container" that he had seen "advertised as conceal[ing] valuables." Arnsmeier opened the top of the can and inside found three baggies containing methamphetamine and a fourth baggie containing a cutting agent.[1]

Defendant was charged with possession and delivery of methamphetamine, felon in possession of a firearm, and attempting to elude a police officer. He moved to suppress the fruits of the inventory, arguing, *inter alia*, that the operative provision of General Order 66.2.1 quoted above is unconstitutionally overbroad. Specifically, defendant contended that (1) that provision, by its express terms, necessarily authorizes—indeed, requires—the opening of "all" closed containers, because any closed container "could" contain valuables, and (2) such categorically sweeping authority is irreconcilable with the constraints of Article I, section 9, of the Oregon Constitution[2] as articulated in *State v. Atkinson*, 298 Or 1,

---

[1] Arnsmeier subsequently opened the trunk of the car and found a loaded magazine for the handgun that he had found in the safe.

[2] Article I, section 9, provides, in part: "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

688 P2d 832 (1984), and *State v. Ridderbush*, 71 Or App 418, 692 P2d 667 (1984).

The trial court rejected that argument:

"I've done a few of these * * *. As long as they've got a policy and there's no discretion, you just open everything up and I agree with you [defense counsel], it's incredibly broad and I'm waiting to hear from the Supreme Court about what, you know, limits they're going to put because those other cases never did back in the [1980s]."

Defendant was then convicted on all charges following a stipulated facts trial.

On appeal, defendant reiterates his overbreadth contention, asserting:

"An inventory policy that authorizes the opening of all closed containers, regardless of whether the container is normally associated with holding valuables, violates Article I, section 9, of the Oregon Constitution. *State v. Eldridge*, 207 Or App 337, 142 P3d 82 (2006).

"That is exactly what the Marion County Sheriff's Office inventory policy in this case did. The written policy required the opening of '[a]ll closed containers that could contain valuables.' Because valuables can be very small, almost any container *could* contain valuables. * * * That systematically administered policy is unconstitutional."

(Emphasis in original.)

The state counters that "the policy, as written, does *not* authorize police officers to open all closed containers. Rather, officers are limited to opening those containers that could contain valuables, and the policy details a number of specific examples of such containers." (Emphasis in original.)

For the reasons that follow, we agree with defendant and, consequently, reverse and remand defendant's convictions for possession and delivery of methamphetamine and for felon in possession of a firearm, which were predicated on items found during the unlawful search of the safe in his backpack.

In *State v. Williams*, 227 Or App 453, 457, 206 P3d 269 (2009), we succinctly summarized the applicable principles:

"To be valid, an inventory of a lawfully impounded vehicle 'must be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory.' [*Atkinson*, 298 Or at 10] (citations omitted). Because of constitutional limitations on such administrative programs, 'as a general rule, an inventory policy cannot authorize the police to open closed containers; in the classic example, the police must inventory a closed fishing tackle box as "one fishing tackle box." ' *State v. Guerrero*, 214 Or App 14, 18, 162 P3d 1048 (2007) (citing *Atkinson*, 298 Or at 10) (further citation and internal quotation marks omitted). An inventory policy may, however, authorize opening containers that are designed to or likely to contain items of value. *Guerrero*, 214 Or App at 19-20. An inventory policy that requires police to open all closed containers, regardless of whether they are likely to contain valuables, is overbroad. *State v. Kay*, 227 Or App 359, 206 P3d 208 (2009); *State v. Nordloh*, 208 Or App 309, 312, 144 P3d 1013 (2006); [*Eldridge*, 207 Or App at 342-43]."

Here, the operative provision of the inventory policy is not phrased in terms of containers that are "designed to" hold valuable items or are "likely to" contain such items. Rather, as noted, the policy requires officers to open and inspect the contents of "[a]ll closed containers that *could* contain valuables." General Order 66.2.1 (emphasis added). As defendant notes, given that items of value can be extremely small and extremely durable—*e.g.*, gemstones, rare coins—any closed container *could*, regardless of *objective likelihood*, contain valuables. And that, in turn, means that the policy, as a practical matter, necessarily requires officers to open and inspect the contents of every opaque closed container.[3]

---

[3] Indeed, during the hearing on the motion to suppress, Arnsmeier acknowledged on cross-examination that, "[a]ccording to the policy, pretty much I can open just about anything."

On redirect examination, the prosecutor posed the leading question, "So if there is a jar and you can see that it contains pickles, you're not going to open it[,]" and Arnsmeier replied, "Correct." That exchange merely confirms the

To be sure, that mandate is implicit, not explicit, as in, *e.g.*, *Williams*, *Eldridge*, and *Kay*. But, for purposes of the protections of Article I, section 9, that is a distinction without a material difference.

The state contends, nevertheless, that the "[a]ll closed containers that could contain valuables" language should not be construed literally but should, instead, be understood in the light of both the policy's express purpose of "protecting the owner's property" and its reference to, *e.g.*, "purses, wallets, fanny packs, backpacks," etc.—which the state describes as being illustrative of closed containers "designed to contain" or "reasonably likely to hold" valuables. The state posits that,

> "[g]iven those express limitations and specific examples of closed containers, the Marion County inventory policy does not allow officers to open *all* closed containers without qualification. The policy only authorizes opening certain kinds of closed containers—those that could contain valuables, similar to the specific examples listed in the policy."

(Emphasis in original.)

With respect, the inventory policy does not bear the state's proffered reading. That is so for several reasons. First, and most obviously, the policy does not say—as our case law amply demonstrates that many other inventory policies can and do—"designed to contain"[4] or (objectively) "likely to contain."[5] Rather, the policy at issue here says simply and unambiguously "could contain"—which is very different indeed. Language has meaning, and, given the constitutional implications of inventories *vis-à-vis* the protections of Article I,

---

unexceptional, quasi-tautological proposition that, if all contents of a closed container are plainly visible and they do not include valuable items, that container will not be deemed to be one that "could contain valuables" for purposes of General Order 66.2.1.

[4] *See, e.g., State v. Keady*, 236 Or App 530, 237 P3d 885 (2010); *State v. Brown*, 229 Or App 294, 304, 211 P3d 315 (2009); *State v. Swanson*, 187 Or App 477, 480, 68 P3d 265 (2003).

[5] *Cf. State v. Stone*, 232 Or App 358, 363-65, 222 P3d 714 (2009), *rev den*, 349 Or 654 (2011) (sustaining inventory policy authorizing officers to open closed container if "[t]he officer reasonably believes that the closed container contains valuable or dangerous personal property").

section 9, we have been scrupulously rigorous in our construction of the terms of inventory policies. *See, e.g., State v. Hanna*, 248 Or App 608, 613, 273 P3d 945 (2012); *State v. Keady*, 236 Or App 530, 534, 237 P3d 885 (2010); *State v. Swanson*, 187 Or App 477, 484, 68 P3d 265 (2003). We will not rewrite the policy.

Further, to the extent that the state points to General Order 66.2.1's generic statement of purpose as somehow qualifying the policy's literal sweep and mandate, such a construction would interject a constitutionally impermissible component of discretion into the policy's application, by which application in any particular circumstance could vary, depending on individual officers' subjective assessment of the nexus between the policy's abstract purpose and a given closed container. Finally, the state's resort to the policy's list of closed containers as illuminating (and limiting) context for the scope and content of "closed containers that could contain valuables" is also unavailing. The policy describes those items as examples of *"closed containers"* and not of "closed containers *that could contain valuables"*—and, in all events, even that definition's scope imposes no meaningful constraint because of its open-ended "include, but are not limited to" proviso.

In sum, the opening of the safe in defendant's backpack and the inspection of its contents were not authorized by a valid inventory policy, rendering the discovery of those contents the product of an unlawful search. Consequently, the trial court erred in denying defendant's motion to suppress and that, in turn, requires reversal and remand of defendant's convictions for possession and delivery of methamphetamine and felon in possession of a firearm, which were predicated on evidence obtained from the unlawful search.

Convictions on Counts 1, 2, and 3 reversed and remanded; remanded for resentencing; otherwise affirmed.