Argued and submitted April 22, reversed and remanded August 6, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

PATRICK JAMES HOCKERSMITH,
*Defendant-Appellant.*

Josephine County Circuit Court
101286M; A151001

333 P3d 1085

David Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

David B. Thompson, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.*

TOOKEY, J.

---

\* Tookey, J., did not participate in oral argument, but subsequently listened to the recording of argument.

**TOOKEY, J.**

Defendant, who was convicted following a conditional plea of guilty to one count of attempting to elude a police officer, ORS 811.540, and one count of criminal driving while suspended or revoked, ORS 811.182(4), appeals his judgment of conviction. He challenges the trial court's denial of his motion to suppress evidence of his identity, revealed by his driver's license, which was found when a deputy removed a wallet from a pair of shorts during a motor vehicle inventory. Defendant first argues that the deputy obtained evidence of his identity in violation of Article I, section 9, of the Oregon Constitution,[1] because the warrantless search of the shorts was not authorized by the inventory policy. Defendant alternatively argues that the inventory policy itself violates Article I, section 9, "because it authorizes deputies to search closed containers that are not intended primarily to hold valuables" and "allows the deputies to exercise discretion in determining which closed containers to open[.]" We conclude that the evidence in the record does not support a determination that the inventory was conducted pursuant to the inventory policy and does not satisfy the constitutional requirements for a warrantless search.[2] Accordingly, we reverse and remand.

Our standard of review is as follows:

> "The physical characteristics of a container and the circumstances under which a container is found constitute historical facts. Historical facts, as found by a trial court, are binding on review if there is evidence in the record to support them. If findings are not made on all such issues,

---

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[2] Our conclusion—that the evidence in the record does not support a determination that the inventory was conducted pursuant to the inventory policy and does not satisfy the constitutional requirements for a warrantless search—makes it unnecessary for us to reach defendant's alternative argument that the inventory policy itself violates Article I, section 9. *See State v. Brown*, 229 Or App 294, 302-03, 211 P3d 315 (2009) ("[W]e first consider whether the officers complied with the [inventory] policy; if they did so, we then consider whether the policy was constitutionally permissible * * *.").

and there is evidence from which such facts could be decided in more than one way, then we will presume that the facts were decided in a manner consistent with the trial court's denial of the motion to suppress. Whether the facts support a determination that the officers' inventory was conducted pursuant to the [policy] and ultimately satisfy the constitutional requirements for a warrantless search is a question of law."

*State v. Swanson*, 187 Or App 477, 482, 68 P3d 265 (2003) (internal quotation marks and citations omitted).

In its letter opinion, the trial court summarized the undisputed facts as follows:

"Deputy Mason had followed/chased the defendant driving a vehicle and upon stopping in a relatively remote area and residence driveway, the defendant left the vehicle and ran. The officers attempted but were unsuccessful in finding the defendant. In addition the officers did not know the identity of the defendant.

"[Deputy] Mason decided to impound the vehicle and called in another officer, Deputy Coney, who he asked to inventory the vehicle, which he did. During the search incident to taking possession of the vehicle[,] Deputy Coney located a wallet which contained defendant's identification, and from that [Deputy] Mason was able to identify the driver as the defendant from the photo on his driver's license. Deputy Coney * * * had found the wallet located in the pocket of a pair of men's shorts (short pants) located in the vehicle."

At the hearing on defendant's motion to suppress, Coney testified that the wallet "was in a pair of light colored blue shorts."[3] He further testified that when he opened the wallet, he believed that he was acting in accordance with

---

[3] The quoted testimony is the only evidence in the record about the physical appearance of the shorts. As noted by the trial court in its letter opinion, Coney remembered little from the search:

"There was no testimony about where the shorts were located in the vehicle, where Deputy Coney found them or in what condition, if he could see the wallet in the pocket either showing or that represented a bulge or otherwise that would belie the wallet's presence, or for that matter any facts in regard to the circumstances as to how he discovered the wallet, its location or how he took possession thereof.

"* * * * *

the Josephine County Sheriff's inventory policy. That policy provides:

"1.  A deputy may conduct a motor vehicle inventory without a warrant or probable cause when:

"a.  The vehicle has been lawfully seized, impounded, or towed, pursuant to the arrest of the driver, prior to or after, towing the vehicle for violations, related enforcement or safety reasons as defined by Oregon Revised Statues, and

"b.  When deputies conduct the inventory within the scope of this section as an administrative procedure.

"2.  Examination of the contents of a motor vehicle pursuant to a criminal investigation or with the intent of discovering evidence of a crime is a search, not an inventory.

"3.  The contents of all motor vehicles that are lawfully seized and/or impounded by this Office shall be subject to inventory in accordance with the provisions in paragraph 1(a) and (b) of this section.

"4.  An inventory should be conducted in the location at which the vehicle is seized unless limited by reasons of safety or practicality. If so, it may be inventoried at a later time following impoundment.

"5.  The owner or operator of the vehicle shall be asked to remove, if possible, all valuables from the vehicle prior to impoundment. If such items cannot be removed, they shall be inventoried before the vehicle is removed, and the owner/operator may be requested to verify the completeness of the inventory by signature.

"6.  A motor vehicle inventory may extend to all areas of the vehicle in which personal property or hazardous materials

---

"How did the [deputy] come upon the wallet? There is no evidence to help the court out in answering this question. We simply do not know. Deputy Coney's memory does not help us.

"Considering the evidence as it is, is a pocket in a pair of pants a closed container? The answer is yes, if based upon the position of the shorts, you cannot determine if there was a wallet in the pants. There is also no evidence of the thickness of the wallet, which pocket it was in, was the pocket not opaque, and upon which conditions the wallet's whereabouts and its identity would be given up by simply looking at the shorts. There is no evidence that the [deputy] picked up the pants or that in touching the pants that he located what was likely a wallet. There is no evidence how the [deputy] located the shorts or where they were in the vehicle."

may reasonably be found, including but not limited to the passenger compartment, trunk and glove compartment.

"7.    When performing a vehicle inventory, *the deputy shall open and inventory any container that based upon its context and/or physical appearance would reasonably be expected to contain valuables. Containers such as, but not limited to, wallets, purses, fanny packs, briefcases, coin purses and day packs shall be opened and inventoried.* Locked containers shall not be forced open, but shall be logged in the impound report as such.

"If the deputy encounters any container for which the deputy can articulate a belief that it contains a hazardous material, the deputy shall open and inspect it before the container is allowed to enter a police facility, storage area, or is released to a tow operator. Hazardous materials shall be handled in compliance with applicable policies.

"8.    Contraband and evidence discovered during the course of a motor vehicle inventory shall be placed into evidence."

(Emphasis added.) Defendant argued to the trial court that (1) Coney exceeded the scope of the policy when he removed the wallet from the shorts and (2) the policy was invalid. The trial court denied defendant's motion to suppress, concluding that "the [deputy] may very well have concluded a pants pocket is designed to hold valuables and reasonably so."

Following the denial of his motion to suppress, defendant entered into a conditional plea of guilty to both of the charged offenses, reserving his right, on appeal from the ensuing judgment, for us to review the denial of his motion. ORS 135.335(3). On appeal, defendant contends that the state failed to prove that the warrantless search of the shorts was authorized by the inventory policy because the state failed to establish that shorts are "[c]ontainers such as, but not limited to, wallets, purses, fanny packs, briefcases, coin purses and day packs" or that the shorts' "context and/or physical appearance" would cause a reasonable person to expect that the shorts contained valuables.

The state does not argue, under the language set forth in the inventory policy, that shorts are "[c]ontainers such as, but not limited to, wallets, purses, fanny packs,

briefcases, coin purses and day packs[,]" nor does the state directly rely on "context" or "physical appearance" as authorization for the search of the shorts. Instead, the state argues that the search of the shorts was authorized by the inventory policy because the pocket on a pair of men's shorts—that is, the pocket on *every* pair of men's shorts—is "designed to hold valuables." The state bases its argument on the contention that the operative provision of this inventory policy "incorporates—albeit with different words—both the 'designed to contain' and 'likely to contain' descriptions of containers that this court has approved" for inventory policies. The state points to *State v. Cordova*, 250 Or App 397, 402, 280 P3d 1036 (2012), in which we recited the general principle that an inventory policy may "authorize opening containers that are designed to or likely to contain items of value." (Internal quotation marks omitted.)

Article I, section 9, protects the right of the people against unreasonable searches and seizures. Except for a "few specifically established and carefully delineated exceptions to the warrant requirement[,]" a warrantless search is *per se* unreasonable. *State v. Connally*, 339 Or 583, 587, 125 P3d 1254 (2005) (internal quotation marks omitted). In *State v. Atkinson*, 298 Or 1, 8, 688 P2d 832 (1984), the Oregon Supreme Court concluded that a motor vehicle inventory "policy is not inherently 'unreasonable' within the meaning of Article I, section 9," if it complies with certain conditions. The court then set forth those conditions, stating that the vehicle must be lawfully impounded and that "any inventory must be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory." *Id.* at 8-10. Finally, the court stated that, if the "inventory deviated from the established policy or procedures of the particular law enforcement agency, the inventory should be deemed invalid." *Id.* at 10. The state bears the burden to prove the lawfulness of the inventory. *State v. Brown*, 229 Or App 294, 302, 211 P3d 315 (2009).

We conclude that the state has failed to meet its burden. In this case, the inventory policy specifically requires a

determination of whether the container, based upon "context and/or physical appearance would reasonably be expected to contain valuables"—if so, the container may be opened and inventoried; if not, the container may not be opened and inventoried. The state presented no evidence about the context or the physical appearance of the shorts from which it could be concluded that the inventory policy was properly applied in this case.

To the extent that the state nonetheless attempts to argue that the pocket on a pair of men's shorts—that is, the pocket on *every* pair of men's shorts—is "designed to hold valuables[,]" that contention is unavailing. As we have explained, "the cases in this area are extremely fact specific and the [policies] governing inventories in each case vary in language and scope." *Swanson,* 187 Or App at 483. Undoubtedly, many inventory policies employ some version of the phrase "designed to carry" (or "to hold") particular items or valuables. *See, e.g., State v. Cruz-Renteria,* 250 Or App 585, 587, 280 P3d 1065 (2012) (policy required an inventory of closed containers "designed to typically carry" various items); *State v. Keady,* 236 Or App 530, 532, 237 P3d 885 (2010) (policy required the opening of closed containers "designed to hold valuables"); *State v. Bean,* 150 Or App 223, 226 n 4, 946 P2d 292 (1997), *rev den,* 327 Or 448 (1998) (policy mandated inventory of closed containers "designed for carrying money and/or small valuables on or about the person").

This inventory policy neither contains the phrase "designed to carry" or "designed to hold," nor employs a version of the phrase "designed to carry" (or "to hold") particular items or valuables. As we have noted, "[l]anguage has meaning, and, given the constitutional implication of inventories *vis-à-vis* the protections of Article I, section 9, we have been scrupulously rigorous in our construction of the terms of inventory policies." *Cordova,* 250 Or App at 403-04 (citing *State v. Hanna,* 248 Or App 608, 613, 273 P3d 945, *rev den,* 352 Or 265 (2012); *Keady,* 236 Or App at 534; and *Swanson,* 187 Or App at 484). Accordingly, the question whether the pocket on every pair of men's shorts is "designed to hold valuables" is not relevant, and the state's argument cannot be reconciled with the provisions of the policy.

In sum, we conclude that the evidence in the record does not support a determination that the inventory was conducted pursuant to the inventory policy and does not satisfy the constitutional requirements for a warrantless search. The trial court erred in denying defendant's motion to suppress.

Reversed and remanded.