Argued and submitted April 11, 2008, affirmed February 18, petition for review denied July 29, 2009 (346 Or 589)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## AARON PAUL BOSTWICK,
*Defendant-Appellant.*

Marion County Circuit Court
Court Numbers
03C-45456, 04C-50293;
A126453 (Control), A127340

202 P3d 259

Theodore C. Coran argued the cause and filed the brief for appellant.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Defendant was convicted of the crimes of identity theft, ORS 165.800, and felon in possession of a firearm, ORS 166.270. He appeals the felon in possession conviction and assigns error to the trial court's denial of his motion to suppress evidence of a firearm seized during an inventory search of a pickup truck. Defendant also assigns error to the upward dispositional departure sentence for that conviction. In a separate case that was consolidated for this appeal, defendant was convicted of the crimes of felon in possession of a firearm and manufacture of a controlled substance. *Former* ORS 475.992, *renumbered as* ORS 475.840 (2005). In that case, defendant assigns error to the denial of a motion to suppress evidence that was seized during the search of a house. Defendant attacks the sufficiency of the affidavit used to establish probable cause for issuance of a warrant to search the house. Defendant further contends that the trial court erred in imposing consecutive sentences for both crimes.

There is no need to elaborate on the assignments of error related to defendant's sentences in either case. Neither error was preserved and, if plain error was committed in either case, there are adequate reasons why the errors should not be reviewed under *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). As to the assignments of error relating to searches of the vehicle and residence, we review the trial court's denials of defendant's motions to suppress for errors of law. *State v. Ehly,* 317 Or 66, 74-75, 854 P2d 421 (1993), and affirm.

The facts of the cases are straightforward and not contested. Defendant was driving a pickup truck when a City of Aumsville Police Officer stopped him for a speeding violation. He was unable to produce a driver's license and gave the officer false identification bearing the name Freddie Hooley. Defendant was cited for operating a motor vehicle without driving privileges, ORS 807.010. The pickup truck was impounded under the authority of ORS 809.720.[1] Defendant locked the vehicle and left the scene on foot, taking the keys

---

[1] ORS 809.720 grants a police officer authority to impound a motor vehicle when a person commits any one of several listed offenses, including operating without driving privileges under ORS 807.010.

with him. The officer summoned a tow truck, and the tow truck operator unlocked the pickup truck. The officer conducted an inventory search of the vehicle before it was transported to the impound lot. That search revealed a loaded handgun located under the driver's seat. On appeal, defendant challenges the validity of the inventory search of the vehicle's passenger compartment.

About a week after the traffic stop, the police conducted a warranted search of a house occupied by defendant and his friend, Gilbert. The affidavit for the warrant included statements of an unnamed confidential informant, among other testimony. The search of the residence revealed a marijuana growing operation tended by defendant and Gilbert, who had a permit to grow medical marijuana. In addition, police found three firearms in the residence. Based on that evidence, defendant was convicted of manufacture of a controlled substance and felon in possession of a firearm. ORS 166.270; ORS 475.992. On appeal, defendant challenges the sufficiency of the search warrant for the residence.

■■ Defendant first claims that the vehicle search was not authorized by the relevant inventory search policy, set out in Aumsville Ordinance No. 453. Under *State v. Atkinson*, 298 Or 1, 688 P2d 832 (1984), a motor vehicle inventory search is lawful under Article I, section 9, of the Oregon Constitution if the vehicle is in lawful administrative custody and the inventory is "conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory." 298 Or at 10. Defendant contends that the ordinance does not permit an officer to search the locked passenger compartment of a vehicle. The state argues that the ordinance requires that the passenger compartment— whether locked or unlocked—be inventoried. Defendant's interpretation of the ordinance is incorrect; the ordinance directs police to search the passenger compartments of impounded vehicles.

Section 3(A) of the ordinance provides that the "content of all vehicles impounded by a police officer shall be inventoried." Section 3(C) further provides, in part:

"Inventories of impounded vehicles shall be conducted according to the following procedure:

"(1)   An inventory of personal property and the contents of open containers shall be conducted throughout the passenger and engine compartments of the vehicle including, but not limited to, accessible areas under or within the dashboard area, in any pockets in the doors or in the back of the front seat, in any console between the seats, under any floor mats and under the seats;

"(2)   In addition to the passenger and engine compartments as described above, an inventory of personal property and the contents of open containers shall also be conducted in the following locations:

"(a)   Any other type of unlocked compartments including, but not limited to, unlocked vehicle trunks and unlocked car-top containers; and

"(b)   Any locked compartments including, but not limited to, locked vehicle trunks, locked hatchbacks and locked car-top containers, if either the keys are available to be released with the vehicle to the third-party towing company or an unlocking mechanism for such compartment is available within the vehicle.

"(3)   Unless otherwise provided in this ordinance, closed containers located either within the vehicle or any of the vehicle's compartments will not be opened for inventory purposes."

Defendant contends that the locked passenger compartment of the vehicle is a closed container under section 3(C)(3) of the ordinance, and, therefore, "will not be opened for inventory purposes." Defendant's interpretation of "closed container" is inconsistent with other parts of the ordinance. First, defendant ignores the plain directive in section 3(C)(1) that an inventory search "shall be conducted throughout the passenger and engine compartments of the vehicle * * *." That unequivocal command leaves no discretion for Aumsville Police Officers to choose *not* to search the passenger compartment of an impounded vehicle, even if it is locked. Section 3(C)(2) of the ordinance further provides that, "[i]n *addition* to the passenger and engine compartments[,] * * *

an inventory of personal property and the contents of open containers shall also be conducted * * *." (Emphasis added.) That phrase indicates that the passenger "compartment" itself is different from other "compartments" (such as "vehicle trunks," "car-top containers," and "locked hatchbacks") and the "containers" mentioned elsewhere in the ordinance, open or closed. Similarly, section C(3) notes that "closed containers" can be located "either within the vehicle or any of the vehicle's compartments," again distinguishing between a "compartment" and a "container." Finally, the definitions section of the ordinance defines a "closed container" as "a container whose contents are not exposed to view." Generally, the passenger compartment of a vehicle is exposed to view. It is not a "closed container" and locking the doors does not make it so.

Thus, the search of the locked passenger compartment of the vehicle was not a search of a "closed container" or a search of an open container in a "locked compartment" that is "[i]n addition to the passenger * * * compartment" under the ordinance. The police searched defendant's vehicle as required by the inventory search policies in Aumsville Ordinance No. 453. The trial court did not err in denying defendant's motion to suppress evidence of the fruits of that search.

■ We turn, then, to defendant's contention that evidence seized from Gilbert's house should be suppressed because the affidavit supporting the search warrant was insufficient. Defendant argues that the affidavit improperly included hearsay information from a confidential informant without sufficient evidence to establish the reliability and veracity of the informant under ORS 133.545(4). That statute provides that, "[i]f an affidavit is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained." The state counters that the affidavit sets out information obtained from the police investigation as well as from a named informant, in addition to the personal observations of an unnamed confidential informant, which together establishes probable cause to search the house. The state argues that the veracity of the unnamed informant was established

by the detail of his testimony as well as the corroboration by other persons of some of his declarations. We agree with the state.

The affidavit was signed by Officer Bird of the Aumsville Police Department. It included information provided by Officer Burnham that was gathered from defendant's traffic stop, including the details of the stop, the false name given by defendant (Freddie Hooley), defendant's phone number and address (the Gilbert residence), and the contraband discovered in his vehicle. Bird restated Burnham's account of several discussions with Gilbert at her residence, and Burnham's description of the strong odor of green marijuana emanating from Gilbert's garage. Much of the information provided by Burnham was confirmed by Bird, including the falsity of the name given by defendant during the traffic stop and the link between Gilbert's address and the phone number provided by defendant. Gilbert also gave Burnham a copy of her medical marijuana permit application that listed defendant, under his real name, as a resident of her home. The affidavit also set out Bird's discovery that defendant had prior convictions and was considered a potential armed career criminal.

Bird disclosed that a confidential, unnamed informant was known to him through traffic stops and contacts at high school dances, but the informant wished to remain anonymous because of his fear of defendant. The informant stated that "if necessary his name could be revealed" and spoke to Bird at the informant's residence. He stated that the man calling himself Freddie Hooley, who had been involved in the traffic stop, was in fact defendant. He informed Bird that the marijuana growing operation at Gilbert's residence was not lawful medical marijuana growing, but an illegal marijuana operation that was maintained by defendant. He stated that defendant had sold marijuana from that operation to the informant's friends. He asserted that defendant told him that defendant had been stopped by the police. And, the informant stated that he knew that Freddie Hooley was an alias used by defendant. He provided defendant's phone number to Bird, who confirmed that it matched the phone number provided by the man from the traffic stop who had called himself Freddie Hooley. The informant stated that he

had seen defendant shooting several firearms and knew that defendant had purchased the firearm found by police after defendant's traffic stop. He provided details of that purchase, including the name of the seller, the cost of the firearm, and how the seller acquired the gun.

The informant claimed that he had recently seen defendant in possession of approximately 17 mature and 25 immature marijuana plants in the garage at Gilbert's residence. He told Bird that he had been inside the garage in the past week and that the marijuana growing operation had been in "full function." He described the security system for the operation and the location of three closed circuit cameras.

In addition to the police officers and the confidential informant, Ripple also provided information to Bird that was disclosed in the affidavit. Ripple reported to Bird that defendant lived at Gilbert's residence and that defendant had recently burglarized Ripple's home and had brandished a firearm at him. Ripple also told Bird that he had a permit to grow medical marijuana and had helped defendant and Gilbert establish an operation to grow marijuana and a security system at Gilbert's residence. Ripple was aware that defendant was a convicted felon and believed that defendant was involved in fraud and identity theft.

■ Defendant contends that the warrant failed to set forth sufficient facts to establish the unnamed informant's reliability as required by ORS 133.545(4). As we held in *State v. Kapsalis/Scroggins*, 123 Or App 138, 141, 859 P2d 1157 (1993), *rev den*, 318 Or 326 (1994), the reliability of an unnamed informant "can be met by showing the informant to be 'credible' or by showing that the information provided is 'reliable.' [*State v. Alvarez*, 308 Or 143, 147, 776 P2d 1283 (1989)]."[2] Our inquiry, then, is whether the affidavit provided sufficient indicia of credibility or reliability.

---

[2] The requirements of ORS 133.545(4) codify the constitutional tests for search warrant affidavits under the Fourth Amendment to the United States Constitution, as set out in *Aguilar v. Texas*, 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964), and *Spinelli v. United States*, 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969). *State v. Young*, 108 Or App 196, 201, 816 P2d 612, *rev den*, 314 Or 392 (1991).

■■    The reliability of information supplied by an unnamed informant can be established by independent corroboration. That corroboration permits the inference that other information from that same informant is also reliable. Moreover, the level of detail of the information supplied by an unnamed informant assists in establishing its reliability. *State v. Binner,* 128 Or App 639, 647, 877 P2d 642, *rev den,* 320 Or 325 (1994) (informant's ability to describe a growing operation "in extreme detail also engender[ed] indicia of reliability").

Both of those markers of reliability help to validate the affidavit in this case. Because the police had information corroborating several of the informant's statements—that the name Freddie Hooley was an alias, that there was a marijuana growing operation and security system in Gilbert's residence, that the man frequenting the residence in question was defendant, that the phone number belonged to defendant, and that the police had discovered a particular firearm in defendant's vehicle after a traffic stop—the magistrate could conclude that other information provided by the informant was likewise reliable. Furthermore, the informant provided specific detail about the grow operation in Gilbert's garage, including the approximate number and maturity of marijuana plants, their location within the garage, and the design of the external security system. That level of detail could also be considered an indicium of reliability by the magistrate.

■    Moreover, the informant voluntarily initiated his report and indicated that his basis of knowledge was personal observation. Direct observation is sufficient as a basis of knowledge under ORS 133.545(4). *State v. Harper,* 197 Or App 221, 228, 105 P3d 883 (2005). Although defendant argues that the informant had a grudge against him and should be disbelieved, the affidavit included information about the informant's motives so the magistrate was able to weigh that consideration before issuing the warrant. The affidavit contained information on the informant's veracity, the reliability of his information, the basis of his knowledge, and his possible motives for making the report. Based on that, and other information in the affidavit, the magistrate could have reasonably concluded that evidence of criminal

activity and contraband could be found at Gilbert's residence. Therefore, the search of the residence was valid, and defendant's motion to suppress evidence discovered in the home was properly denied.

Because defendant's car was properly searched pursuant to the City of Aumsville's vehicle impound inventory search ordinance, and Gilbert's home was searched pursuant to a properly issued warrant, the trial court did not err in denying defendant's motions to suppress the evidence discovered in those searches.

Affirmed.