Argued and submitted August 1, 2019, reversed and remanded April 8, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

AARON SCOTT MARMON,
*Defendant-Appellant.*

Linn County Circuit Court
16CR71413; A166665

463 P3d 555

Defendant appeals a judgment of conviction for both unlawful delivery and unlawful possession of heroin, assigning error to the trial court's denial of his motion to suppress evidence obtained during a search of his residence. The search occurred after police obtained a warrant based on information provided by a confidential informant (CI). *Held*: The affidavit supporting the search warrant failed to establish the reliability of the CI and, without the evidence the CI provided, the warrant lacked probable cause. Accordingly, the trial court erred when it denied defendant's suppression motion.

Reversed and remanded.

Daniel R. Murphy, Judge.

Morgen E. Daniels, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and Mooney, Judge, and Kamins, Judge.*

KAMINS, J.

Reversed and remanded.

_____
    * Kamins, J., *vice* Hadlock, J. pro tempore.

**KAMINS, J.**

Defendant appeals a judgment of conviction for delivery of heroin, ORS 475.850, and possession of methamphetamine, ORS 475.894. He contends that the trial court improperly denied his motion to suppress evidence obtained from a warrant search of his home. We conclude that the affidavit supporting the warrant failed to establish the reliability of a confidential informant and that, without the evidence the informant provided, the warrant lacked probable cause. Accordingly, we reverse and remand.

The facts of this case center on defendant's house (the Water Avenue house). In August of 2016, a confidential informant (CI)—a convicted felon knowledgeable about drug use and transactions—provided information to police about the Water Avenue house. The CI reported that two individuals who he had heard were selling heroin, Tiller and Sugden, lived at the Water Avenue house. The CI also claimed to have been to the house and seen burnt foil and other "heroin use materials" inside.

In August and September 2016, two neighbors also reported concerns to police over potential drug trafficking activity at the house, including "high volume short stay" traffic and a woman seen using drugs in a parked car. Following those reports, on September 6, an officer visited the Water Avenue house and spoke with defendant in the doorway. Defendant stated that two of his roommates had recently moved out and that he lived there alone with his seven-year-old son. He denied any drug activity, but he acknowledged knowing Tiller.

During the month of October, a detective periodically checked on the Water Avenue house and observed that Tiller and a woman "consistent with" the description of Sugden were "frequenting" the house. Both Tiller and Sugden had criminal records of drug-related activity, including outstanding warrants.

Officers observed three other suspicious events at the Water Avenue house. The first occurred on October 12, more than a month after the officers had spoken with defendant. A detective observed a man, who he recognized as

Anderson, leaving the Water Avenue house. Anderson had recently been cited for heroin possession.

The second event occurred the following day. A detective observed a car belonging to Johnston—who had been convicted of heroin delivery—in defendant's driveway. When Johnston left, the detective pulled him over for a traffic infraction and discovered a large amount of money and a scale used to weigh heroin. Both the money and the scale contained traces of heroin. A search of Johnston's phone revealed numerous messages consistent with drug sales, including one from defendant. The same day that Johnston visited the Water Avenue house, defendant had texted him, "I got what I owe you plus a little more."

The final notable event, on November 1, involved another convicted drug offender—Barclay—traveling to the Water Avenue house on a bicycle. Barclay went into the entry area of the house, spent four minutes there, and then left. When he was subsequently stopped by a police officer, Barclay initially denied visiting the house at all. The officer discovered several items commonly associated with methamphetamine on his person, including two straws and a baggie. Those items tested positive for trace amounts of methamphetamine.

Based on that series of events, along with defendant's criminal history, which involved a "cycle" of drug-related arrests, police sought and obtained a warrant to search the Water Avenue house on November 4, 2016. The search uncovered items associated with drug transactions, including a scale, spoon, and baggie with trace amounts of heroin; a baggie containing a small amount of methamphetamine; and a notebook containing what appeared to be drug records. A search of defendant's phone also revealed text messages related to drug transactions.

Defendant asked the trial court to suppress the evidence found at the Water Avenue house, arguing that the warrant did not establish probable cause sufficient to justify a search. After reviewing the detective's affidavit recounting the observations detailed above, the trial court determined that the affidavit failed to establish the reliability of

the CI. Nevertheless, the court concluded that, even after excising the CI's information, the affidavit contained sufficient evidence to establish probable cause, and the court admitted the evidence obtained from the search. Following a bench trial, the court found defendant guilty of methamphetamine possession and heroin delivery. On appeal, defendant assigns error to the trial court's denial of his motion to suppress, and the state cross-assigns error to the trial court's decision to excise the information obtained from the CI.

We review the question of whether a warrant affidavit establishes probable cause for legal error. *State v. Webber*, 281 Or App 342, 346, 383 P3d 951 (2016). Because search warrants are presumptively valid, it is a defendant's burden to establish that a warrant is defective, and we resolve "doubtful cases" in favor of upholding the warrant. *State v. Van Osdol*, 290 Or App 902, 907-08, 417 P3d 488 (2018). In making that determination, we rely on the facts set forth in the affidavit, together with any reasonable inferences that those facts support. *State v. Chamu–Hernandez*, 229 Or App 334, 341, 212 P3d 514, *rev den*, 347 Or 43 (2009).

In light of the parties' arguments, in reviewing the sufficiency of this warrant, we must make two determinations: whether the information obtained from the CI was reliable and, depending on the answer to the first question, whether the affidavit as a whole (either with or without the information from the CI) establishes probable cause that evidence of a crime will be discovered. Turning to the reliability of the CI's information first, the affidavit must demonstrate one of two things: that the informant is "credible" or that the information provided is "reliable." *State v. Bostwick*, 226 Or App 57, 64, 202 P3d 259, *rev den*, 346 Or 589 (2009); *see also State v. Andersen*, 361 Or 187, 200, 390 P3d 992 (2017) ("When the affiant lacks personal knowledge of the facts that give rise to probable cause and relies instead on information from other persons, the affidavit must demonstrate the reasons why the affiant finds the informant credible or reliable.").

Both sides agree, as do we, that the affidavit is silent on the CI's credibility, other than establishing that he

is familiar with drug use and drug culture. Indeed, nothing in the affidavit even speaks to facts that would establish his credibility, such as the CI's history of providing accurate information. *See, e.g.*, *State v. Shutvet*, 105 Or App 97, 100, 803 P2d 287 (1990), *rev den*, 311 Or 427 (1991) (finding an informant credible "on the basis of previous information he had given to the police").

Because the affidavit is silent on the credibility of the CI himself, both the state and defendant focus their arguments on the reliability of the CI's information.[1] *See State v. Alvarez*, 308 Or 143, 147, 776 P2d 1283 (1989) ("When we focus upon the reliability of an informant's information, however, we consider something distinct from the credibility, character, or reputation for truthfulness of the informant. The reliability of an informant's information refers to circumstances assuring that the particular information is indeed trustworthy on a specific occasion."). The CI provided three pieces of relevant information: that he had personally observed heroin-related items in the Water Avenue house, that he knew Tiller and Sugden lived at the house, and that he had heard that Tiller and Sugden were selling heroin. Again, the affidavit's description of the CI's information is not of much help. The affidavit is silent on details that might internally corroborate the information, such as, for example, the CI's description of the Water Avenue house sufficient to demonstrate that he had been inside, details about where and how the CI learned that Tiller and Sugden resided there, or even a physical description of the key players. *See Bostwick*, 226 Or App at 65 ("[T]he level of detail of the information supplied by an unnamed informant assists in establishing its reliability.").

The state asks us to ignore the lack of detail because independent facts are sufficiently consistent with the CI's statements to corroborate them. However, in order

---

[1] Both parties focus their arguments on the second prong of the two-part *Aguilar-Spinelli* test, and we similarly focus our analysis. *See State v. Evoniuk*, 80 Or App 405, 722 P2d 1277 (1986) ("Under Oregon law, if an affidavit contains hearsay information provided by unnamed informants, it must satisfy the two-part *Aguilar-Spinelli* test by setting forth (1) the basis of the informant's knowledge and (2) facts showing the informant's veracity."); *see also Spinelli v. United States*, 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969); *Aguilar v. Texas*, 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964).

for outside facts to act as the sole corroboration for the CI's information, those facts themselves must be sufficiently detailed in the affidavit. The corroborating information here appears to be that the outside of the Water Avenue house is consistent with the CI's description, that two neighbors also reported drug trafficking concerns with the house, and that Tiller and, perhaps, Sugden were seen at the house. But that information does not contain the type of detail that could corroborate an unnamed informant's report. Nothing about that additional information demonstrates that the CI is likely telling the truth—by corroborating details that would typically not be known to a person who lacked knowledge of the subject, for example. A consistent description of an openly visible house exterior does not substantially corroborate the CI's statements, nor does the fact that neighbors called in concerns over drug trafficking in a neighborhood where drug trafficking is fairly common.[2]

The most detailed observation is that the CI accurately reported that defendant associated with Tiller and perhaps Sugden. Indeed, a detective observed Tiller and a woman "consistent with" Sugden frequenting the Water Avenue house, and defendant himself mentioned to police that he knew Tiller. However, that corroborates only that the CI correctly identified a person who associates with defendant. Given that defendant chose to "mention" the same thing to police, it does not appear that defendant was attempting to keep that information private. Indeed, the CI could have observed Tiller leaving the house and invented the rest, which would have been equally consistent with the information provided. If, as here, the CI's information is just as consistent with fabrication as with veracity, then the affidavit does not demonstrate reliability. Accordingly, we reject the state's cross-assignment of error and examine the affidavit without the CI's information.

With the CI's information excised, we conclude that the affidavit lacks sufficient evidence to establish probable cause. The facts of the affidavit must establish that it is more

___

[2] Several of the "spot surveillances" of the Water Avenue house described in the warrant affidavit occurred while officers were investigating another house in the neighborhood, a neighborhood the affidavit characterized as a "high drug crime area, heavily populated by users and dealers of controlled substances."

likely than not: "(1) that a crime has been, or is currently being, committed, and that (2) evidence of that crime (3) will be found in the place to be searched." *State v. Cannon*, 299 Or App 616, 626-27, 450 P3d 567 (2019). The state focuses its argument on whether the affidavit establishes probable cause for the misdemeanor crime of frequenting a place where controlled substances are used, in violation of ORS 167.222.[3] As we recently observed, for a warrant to establish probable cause of that crime, it must establish that

> "a person with the legal authority over the location must knowingly permit, through affirmative or tacit authorization or consent, the use, possession, or sale of the controlled substances at the location where a principal or substantial purpose is the commercial sale or use of illegal drugs."

*Van Osdol*, 290 Or App at 915.

Although the information in the affidavit is certainly suggestive of drug activity at the Water Avenue house, probable cause of the elements of the stated crime for a search warrant requires substantially more than that. At their core, the facts here establish that two neighbors reported concerns about the house in August and September, and four people with drug records, some of whom were carrying drug paraphernalia, were stopped or observed at the house over a three-month period. Those events fail to establish that drugs or evidence of drug transactions were likely to be discovered at the Water Avenue house on November 4.

Moreover, much of the information in the affidavit was stale by November 4. Staleness is a "shorthand description of the analysis about whether or not the evidence sought will be there after the length of time since the event described in the affidavit occurred." *State v. Young*, 108 Or App 196, 204, 816 P2d 612 (1991), *rev den*, 314 Or 392 (1992). We evaluate the staleness of the evidence in an affidavit because "probable cause must exist at the time the order is issued." *State v. Mituniewicz*, 186 Or App 95, 104, 62 P3d 417, *rev den*, 335 Or 578 (2003). The only recent event in

---

[3] ORS 167.222(1) provides that "[a] person commits the offense of frequenting a place where controlled substances are used if the person keeps, maintains, frequents, or remains at a place, while knowingly permitting persons to use controlled substances in such place or to keep or sell them" illegally.

this affidavit occurred three days prior when a man spent four minutes at defendant's house and was then found with drug paraphernalia—but neither drugs nor money (the classic results of a drug transaction). The most suspicious event, and the only one directly involving defendant, occurred *three weeks* prior, on October 13. On that day, defendant had sent a text message to a suspected drug dealer stating that he had money for him, and the suspected drug dealer was stopped later that day after leaving the Water Avenue house with a large quantity of money in his possession. However, information related to readily consumable drugs like heroin or marijuana is particularly prone to staleness. *Van Osdol*, 290 Or App at 909-10 (heroin evidence stale four days later); *State v. Kittredge/Anderson*, 36 Or App 603, 606-07, 585 P2d 423 (1978) (marijuana evidence stale four days later). The affidavit offers no reason to believe that evidence from an October 13 transaction would be at the house on November 4. As a result, a reasonable magistrate could not conclude that drugs probably remained on site three weeks after a suspected transaction.[4]

Because the facts in the warrant affidavit fail to establish probable cause that evidence of a crime would be located at the Water Avenue house on November 4, the search warrant was not valid, and the evidence obtained there should have been suppressed. Accordingly, we reverse and remand for further proceedings.

Reversed and remanded.

---

[4] The state suggests only that evidence of Tiller and Sugden's ongoing drug enterprise defeats defendant's assertions of staleness, but the affidavit's scant information about that "enterprise" is derived only from the CI.