Argued and submitted June 15, 2021, affirmed April 20, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

AARON CHRISTOPHER LEE,
*Defendant-Appellant.*

Linn County Circuit Court
18CR62116; A171927

509 P3d 689

In this criminal appeal, defendant contests his conviction for felon in possession of a firearm. Defendant argues that the trial court erred by denying his motion to suppress evidence obtained under a search warrant. At trial and on appeal, defendant contends that the Oregon Constitution prohibits the use of anticipatory search warrants. *Held*: Anticipatory search warrants require, like regular search warrants, that at the time of issuance it is probable that evidence will be found when the warrant is executed. Anticipatory warrants differ only in that they contain some factual condition that must occur prior to execution of the warrant. Neither the text nor the historical context of Article I, section 9, of the Oregon Constitution prohibit the use of anticipatory search warrants. Provided that anticipatory search warrants must adhere to all requirements applicable to all search warrants, including particularity, specificity, and lack of staleness, the use of anticipatory search warrants does not contravene case law. In this case, the affidavit supporting the search warrant provided probable cause that the triggering condition would occur and that evidence would probably be found upon execution of the warrant.

Affirmed.

David E. Delsman, Judge.

Erik Blumenthal, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Mooney, Presiding Judge, and Kamins, Judge, and Pagán, Judge.*

––––––––––––––
 * Kamins, J., *vice* DeVore, S. J.; Pagán, J., *vice* DeHoog, J. pro tempore.

KAMINS, J.

Affirmed.

Mooney, P. J., dissenting.

**KAMINS, J.**

In this criminal appeal, defendant contests the trial court's denial of his motion to suppress, which predicated his guilty plea to felon in possession of a firearm, ORS 166.270(1). On appeal, defendant reiterates his argument that Article I, section 9, of the Oregon Constitution prohibits the use of "anticipatory" search warrants—that is, where probable cause is based on the fulfillment of certain conditions to happen after the issuance, but before execution, of the warrant. Because we conclude that such warrants are not categorically impermissible under the Oregon Constitution and that the evidence in the warrant affidavit established probable cause to search the home, we affirm.

## I.  BACKGROUND

In early December 2016, Albany Police Detective Davis obtained information about suspected drug distribution from an informant, Controlled Buy Informant (CBI), who sought leniency on a pending criminal matter. The CBI identified an Albany man, Alleged Drug Dealer (ADD), from a DMV photo and explained that he had purchased heroin from ADD at ADD's house twice a week for the past four months. The CBI said that he had purchased heroin in quarter-ounce increments for $325, and he agreed to do a controlled buy from ADD.

Another confidential informant who had previously provided accurate information to the police regarding drug distribution identified ADD as a "major heroin dealer" in the area. Other informants had also referenced ADD by name as a person from whom heroin could be purchased and had provided an address consistent with the one provided by the CBI as where he had purchased heroin from ADD.

At that address, Davis located a truck registered to ADD. From a business advertisement on the truck, Davis obtained a phone number that had been discovered during searches of three cellular telephones associated with people who had been arrested for heroin offenses. Davis also found that, as a victim, ADD had provided the same phone number to Albany police in connection with a report of menacing in 2015.

Using that information and his training and experience during 22 years in law enforcement, Davis obtained a search warrant for the Albany house identified by the CBI. The warrant included a condition—that the CBI would complete a purchase with police surveillance—to corroborate the validity of the information from the multiple informants, two of whom sought leniency in other matters. The warrant provided several requirements to ensure that the condition was met:

"[The CBI] is searched and found not to possess any money other than narcotics investigative buy monies furnished by the Albany Police Department.

"[The CBI] is continuously surveilled to go directly to [the subject residence] by law enforcement officers.

"Surveillance on [the subject residence] is constant until [the CBI] emerges from [the subject residence] and is taken back into custody by law enforcement officers.

"[The CBI] is searched by law enforcement officers and found in possession of field tested presumptive positive heroin, and found to no longer be in possession of narcotics investigative buy monies previously furnished by the Albany Police Department."

The CBI completed the controlled buy under the specified requirements. Police executed the search warrant and found defendant at the house. Several other people there identified defendant as a party to the drug deal. Police searched defendant's backpack and found methamphetamine and a firearm.[1] Defendant acknowledged that he was at the residence when the drug deal happened but claimed that he was in the garage and had nothing to do with the sale.

Before trial, defendant moved to suppress the evidence seized from his backpack. He argued that "anticipatory warrants"—warrants containing a condition prior to their ability to be executed—are prohibited by the provision of Article I, section 9, that "no warrant shall issue but upon probable cause." In defendant's view, that clause requires

---

[1] The record does not indicate that defendant contested the search of his backpack on any basis other than the validity of the search warrant.

that probable cause exist at the time the warrant is issued, not upon the occurrence of a set of conditions.

## II.  ANTICIPATORY WARRANTS

In Oregon, a search warrant is issued upon a showing before a "neutral and detached magistrate" that there is reason to believe that the facts stated in the affidavit are true and that those facts are sufficient to establish probable cause to justify the search requested. *State v. Castilleja*, 345 Or 255, 264, 192 P3d 1283, *adh'd to on recons*, 345 Or 473, 198 P3d 937 (2008). Probable cause exists when the facts in the affidavit would "lead a reasonable person to believe that seizable things will probably be found in the location to be searched." *Id.*

Anticipatory warrants are similar in that they require probable cause that evidence will be found at the specified location at the time of the warrant's execution, but different in that they also contain a condition (such as the arrival of a package) that must occur before the warrant can be executed—meaning that "at some future time (but not presently) certain evidence of crime will be located at a specific place." *United States v. Grubbs*, 547 US 90, 94, 126 S Ct 1494, 164 L Ed 2d 195 (2006) (internal quotation marks omitted). Like ordinary warrants, anticipatory warrants "require the magistrate to determine (1) that it is *now probable* that (2) contraband, evidence of a crime, or a fugitive *will be* on the described premises (3) when the warrant is executed." *Id.* at 96 (emphasis in original). Anticipatory warrants in the context of drug cases are particularly common. *See United States v. Perkins*, 887 F3d 272, 276 (6th Cir 2018) ("Anticipatory warrants triggered by controlled deliveries are nothing new.").

The United States Supreme Court unanimously determined that anticipatory warrants are not categorically unconstitutional under the Fourth Amendment's provision that "no Warrant shall issue, but upon probable cause." *Grubbs*, 547 US at 95. Because all warrants focus on whether evidence will be found when the search is conducted, the Court reasoned that "all warrants are, in a sense anticipatory." *Id.* It is therefore immaterial that the contraband

to be seized under the warrant was not at the location to be searched when the warrant was issued, so long as there was probable cause to believe that the contraband would be there when the warrant was executed. *Id.* at 96. The Court also noted an important limit on anticipatory warrants: not only must the affidavit set forth facts that establish probability that the contraband will be found *if* the triggering event occurs, but also establish probability that the triggering event *will occur. Id.* at 96-97. Both facets are essential. *Id.*

Most states have also determined that anticipatory warrants are permissible, either by following the federal standard or concluding so under their state's constitution. *See generally Pennsylvania v. Glass*, 562 Pa 187, 192 n 4, 754 A2d 655, 658 n 4 (2000) (recounting survey of federal and state approaches to anticipatory warrants).[2] Several state courts have also noted (1) a state law preference for searches made pursuant to a warrant, and (2) that a properly drafted anticipatory search warrant advances that preference by providing "independent pre-search review by a neutral magistrate, while at the same time providing police with the ability to respond quickly to ongoing criminality." *Id.* at 194, 754 A2d at 660; *Alvidres v. Superior Court*, 12 Cal App 3d 575, 581, 90 Cal Rptr 682, 686 (Cal Ct App 1970) ("We believe that achievement of the goals which our high court had in mind in adopting the exclusionary evidence rule is best attained by permitting officers to seek warrants in advance when they can clearly demonstrate that their right to search will exist within a reasonable time in the future."). With that background in mind, we turn to Oregon's constitution.

## III.   ARTICLE I, SECTION 9, ANALYSIS

As framed by defendant, the question reduces to whether anticipatory warrants as a concept are categorically unconstitutional under Oregon's constitution. To answer that question

---

[2] The Pennsylvania Supreme Court also observed that the majority of states have approved anticipatory warrants and that the overwhelming tendency for states that have rejected anticipatory warrants is on state statutory grounds. *Glass*, 562 Pa at 194 n 4, 754 A2d at 658 n 4.

> "we examine the text [of the constitutional provision], in its historical context and in light of relevant case law, to determine the meaning of the provision at issue most likely understood by those who adopted it, with the ultimate objective of identifying relevant underlying principles that may inform our application of the constitutional text to modern circumstances."

*Couey v. Atkins*, 357 Or 460, 490-91, 355 P3d 866 (2015) (internal quotation marks omitted). In the specific case of Article I, section 9, the absence of a meaningful historical record surrounding the adoption of that measure has increased the weight that the text itself and the case law interpreting that text must carry. *See State v. Hemenway*, 353 Or 129, 156-57, 295 P3d 617, *vac'd*, 353 Or 498, 302 P3d 413 (2013) (Landau, J., concurring).[3]

A. *Constitutional Text*

Article I, section 9, of the Oregon Constitution provides:

> "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

Defendant contends that the specific language "no warrant shall issue but upon probable cause" puts a strict temporal limit on courts—that is, that, unless and until probable cause exists at the time based only on historical occurrences, the court may not issue a warrant.

The key terms that help define the temporal relationship in that phrase are "shall," "issue," and "upon." To provide insight as to what the drafters might have meant by using certain words, we consider, among other things, contemporaneous dictionaries. *See State v. Davis*, 350 Or 440, 447, 256 P3d 1075 (2011) (citing an 1828 general dictionary and an 1839 legal dictionary in the analysis of Article I,

---

[3] In addition to the concurring opinion in *Hemenway*, former Oregon Supreme Court Justice Landau explored the history of the adoption of and early case law interpreting Article I, section 9. *See generally* Jack L. Landau, *The Search for the Meaning of Oregon's Search and Seizure Clause*, 87 Or L Rev 819, 836-40 (2008).

section 12). Time appropriate definitions of the word "shall" include "to be hereafter able to, to be hereafter determined to, to be hereafter permitted to,"[4] or, "[i]n the present tense, *shall*, before a verb in the infinitive, forms the future tense."[5] In context of Article I, section 9, both uses of the word "shall" appear to carry the connotation of the future tense, meaning no warrant may be permitted to issue but upon probable cause.

"Issue," as a verb, is defined by one source as meaning "[t]o go out, to pass out, to proceed; to send forth or emit; to spring from, to flow from." Charles Richardson, 1 *A New Dictionary of the English Language* 1164 (Phila, EH Butler & Co 1846); *see also* Noah Webster, 1 *American Dictionary of the English Language* (unpaginated) (NYC, S Converse 1828) (defining "issue" as "[t]o send out; to put into circulation"). In the context of a search warrant, "issue" is synonymous with the act of sending forth something with the authority of the institution so doing.

"Upon," as a preposition, means "[o]n, over, on the surface, on the top, in a state of view, in immediate consequence of; with respect to, in consideration of; with reliance on, on supposition of; by, near to; with exactness, according to." John Ash, 2 *New and Complete Dictionary* (unpaginated) (London, Vernor & Hood 1795); *see also* Webster, 2 *American Dictionary* (defining "upon" as a preposition meaning "[i]n a state of resting or dependence; as, *upon* this condition, he will contract with you *upon* these terms. *Upon* our repentance we hope to be forgiven."). Thus, the word serves as a preposition that introduces the conditions (probable cause, description of places to be searched, etc.) required for the action (issuing a warrant) to occur.

In light of those historical definitions, "no warrant shall issue but upon probable cause" likely means that a court is only permitted (shall) to send out with authority of the court (issue) a warrant to search based on the condition of (upon) probable cause. That definition does not answer the

---

[4] John Ash, 2 *New and Complete Dictionary of the English Language* (unpaginated) (London, Vernor & Hood 1795).

[5] Noah Webster, 2 *American Dictionary of the English Language* (unpaginated) (NYC, S Converse 1828).

question whether the facts supporting probable cause can include a future event for which there is also probable cause.

We note that the defendant in *Grubbs* presented an almost identical textual argument that the Fourth Amendment requires that "no Warrants shall issue, but upon probable cause" and that, therefore, anticipatory warrants were unconstitutional. *Grubbs*, 547 US at 94-95. The Court rejected that argument without in-depth textual analysis, instead pointing out that the very nature of a probable cause determination for a search warrant was forward looking and based on the probability that the specified items would be found when the search was executed. *Id.* at 95-96.[6]

B.  *Historical Context*

Although it has been established that the origin of Article I, section 9, can be traced directly to the Fourth Amendment, *State v. Mansor*, 363 Or 185, 206, 421 P3d 323 (2018), the adoption of the Oregon provision appears to have occurred with little recorded discussion over the intended meaning of the words selected. Jack L. Landau, *The Search for the Meaning of Oregon's Search and Seizure Clause*, 87 Or L Rev 819, 836 (2008). The Fourth Amendment, as arising from previous state constitutional documents, was likely a "reaction[] to abusive 'general warrants' of the English colonial government, which gave government agents 'unlimited authority to search and seize.'" *Mansor*, 363 Or at 206. Given that anticipatory warrants must adhere to the same particularity requirements, the history does not establish that anticipatory warrants violate Article I, section 9.

C.  *Case Law Interpreting the Warrant Requirement of Article I, Section 9*

Because no prohibition against anticipatory warrants arises from the text or historical context of Article I, section 9, we consider anticipatory warrants in light of the

_____

[6] Defendant argues that the analysis in *Grubbs* is inapplicable because Article I, section 9, is more protective of "personal rights," but he does not indicate how the text, context, or history of the language should be subject to a different analysis in the context of anticipatory warrants. Indeed, the "vast majority" of states with rights-based constitutional models have upheld anticipatory warrants under those constitutions. *Hawaii v. Curtis*, 139 Haw 486, 497 n 13, 394 P3d 716, 727 n 13 (2017) (collecting cases).

requirements stemming from the case law. In addition to the requirement of probable cause, Oregon courts police the reasonableness of warrants through the principles of particularity, specificity, and staleness.

### 1. *Particularity and specificity*

To prevent intrusion into privacy interests other than those supported by probable cause and approved by the reviewing magistrate, search warrants must describe with particularity and specificity the premises to be searched and the items to be seized. *See Mansor*, 363 Or at 212 (to avoid unreasonable intrusion into protected interests, warrant must be sufficiently specific to allow officers to ascertain items to be searched with reasonable certainty); *State v. Reid*, 319 Or 65, 70, 872 P2d 416 (1994) (Oregon Constitution requires that a warrant state, or describe with particularity, the location and designation of places to be searched, and may not authorize broader search than supported by affidavit); *State v. Ingram*, 313 Or 139, 144, 831 P2d 674 (1992) (explaining that warrants must be specific enough to remove police discretion in choosing which things to search). Those limitations further two important principles. First, those requirements circumscribe a search or seizure to only those things for which a showing of probable cause has been made. *State v. Farrar*, 309 Or 132, 148-49, 786 P2d 161, *cert den*, 498 US 879 (1990) (requirement designed to "narrow the scope of the search to those premises for which a magistrate has found probable cause to authorize to search"). Second, those requirements also work to shift the determination of what to search from law enforcement to the judicial officer. *See State v. Blackburn/Barber*, 266 Or 28, 35, 511 P2d 381 (1973) (a warrant must identify with reasonable certainty what to search). By narrowing the scope of what, where, and when to search, those requirements protect against the abuses of privacy interests posed by unlimited general warrants. *Mansor*, 363 Or at 206; *Blackburn/Barber*, 266 Or at 34.

### 2. *Staleness*

Of particular importance to our analysis of anticipatory warrants is the concept of staleness. "The purpose of [this] analysis is to determine whether, given the time

between the event described and the issuance of the warrant, there is a reasonable inference that the evidence will be where the affidavit suggests." *State v. Ulizzi*, 246 Or App 430, 438, 266 P3d 139 (2011), *rev den*, 351 Or 649 (2012). Inherent in any probable cause determination is the reliance on historical occurrences being probative of future conditions. By their very nature and the incontrovertible flow of time, a search warrant authorizes a future search, not a search of the past. There is invariably a lag between the perception of an occurrence, representations about those perceptions by the police, issuance of the warrant, and finally, execution of the search. For that reason, Oregon courts have suppressed the results of searches when too much time has elapsed between the factual occurrences and affidavit attestation. *See State v. Scheidemann*, 252 Or 70, 73-74, 448 P2d 358 (1968) (concluding that the time between the last sale of heroin recited in the affidavit and the officer's attestation to the affidavit did not provide a strong basis for believing that the heroin was still at the premises); *State v. Marmon*, 303 Or App 469, 476, 463 P3d 555 (2020) ("[I]nformation related to readily consumable drugs like heroin or marijuana is particularly prone to staleness."). The very concept of staleness recognizes the immutable tendency that as time progresses further from the occurrences perceived, the less likely predictions based on those perceptions are to be true. To that extent, the United States Supreme Court's observation that "all warrants are, in a sense, anticipatory" is particularly apt. *Grubbs*, 547 US at 95.

The magistrate reviewing any warrant—anticipatory or otherwise—must anticipate, based on the observations and averments, whether it is more likely than not that seizable things will be found where and when the search is executed. That anticipation is based on a reasoned assessment of the reliability, specificity, recency, numerosity, and logical force of the observations and averments. *See Farrar*, 309 Or at 144-45 (discussing reliability and credibility factors of named informants); *State v. Spicer*, 254 Or 68, 71-72, 456 P2d 965 (1969) (several purchases of marijuana over a long period of time from the same location increased likelihood marijuana would be found in that location). As with the staleness analysis, the remainder of those assessments

all serve the determination of how likely the assertions contained in the affidavit are to lead to evidence of a crime located in the place to be searched. That is, an increase in the level of any of those categories tends to increase the probability that a search will yield the expected evidence. Each of those assessments serves to reduce the role that speculation plays in the determination of what, where, and when to search. *See State v. Kreis*, 365 Or 659, 665, 451 P3d 954 (2019) (explaining in a different context that probable cause is more than speculation); *State v. Villagran*, 294 Or 404, 410, 657 P2d 1223 (1983) (discussing role that logical conclusions, supported by facts and circumstances recited in affidavit, play in probable cause determinations).

By extension of that logic, anticipatory warrants, when properly drafted, reduce the role of speculation by increasing the probability that contraband or evidence will be found, particularly in the common use of such warrants in controlled delivery or controlled buy situations. *United States v. Ricciardelli*, 998 F2d 8, 11 (1st Cir 1993); Wayne R. LaFave, 2 *Search & Seizure* § 3.7(c) (6th ed 2021) ("[I]t may fairly be said that as a general proposition the facts put forward to justify issuance of an anticipatory warrant are more likely to establish that probable cause will exist at the time of the search than the typical warrant based solely upon the known prior location of the items to be seized at the place to be searched.").

The staleness analysis provides one additional insight. Courts must consider information about several forward-looking factors to determine whether the passage of time between perception of the event, the affidavit, and the proposed search renders a probable cause determination unreasonable. *Ulizzi*, 246 Or App at 438-39 (highlighting factors of length of time, perishability or durability of item, mobility of item, inculpatory character of item, and propensity of offender to retain possession of item). To be sure, each of those factors is informed by history, but their logical utility in supporting a warrant is related to the contingent future events. The nature of each of those factors requires an assessment of how the potential occurrences taking place *after* the officer's perception of events impacts the probability that the seizable thing will be found when the search

is conducted. *See, e.g.*, *State v. Duarte/Knull-Dunagan*, 237 Or App 13, 25, 238 P3d 411, *rev den*, 349 Or 370 (2010) (explaining information in affidavit was not stale, despite three-month gap, because marijuana grow equipment likely used for more than one crop). Put another way, magistrates are not limited to considering only historical occurrences in making the probable cause determination; indeed, they typically do consider how future likelihoods bear on present probable cause.

   3.  *General preference for searches made under warrant*

        Finally, Oregon search and seizure case law reflects a strong preference for searches made pursuant to a warrant. Indeed, "warrantless entries and searches of premises are *per se* unreasonable unless falling within one of the few specifically established and well-delineated exceptions to the warrant requirement." *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983) (internal quotation marks omitted); *see State v. Banks*, 364 Or 332, 337, 434 P3d 361 (2019) (citing *Davis* for categorical treatment of warrantless searches); *State v. Sunderman*, 304 Or App 329, 336, 467 P3d 52 (2020) (same); *see also State v. McCarthy*, 369 Or 129, 176-77, 501 P3d 478 (2021) (eliminating the automobile exception to the warrant requirement). Anticipatory warrants advance the policy favoring warranted searches by encouraging police to obtain review by a neutral and detached magistrate at an early stage of the process.

        In sum, anticipatory warrants are limited by the same probable cause, particularity, specificity, and staleness requirements that regulate traditional warrants. The text of and historical context for Article I, section 9, does not foreclose the concept or use of anticipatory warrants, and the principles derived from case law in many ways support their use. We conclude that, when adhering to the strictures applicable to all warrants, anticipatory warrants are permissible under Article I, section 9.

D.  *Application*

        Having concluded that anticipatory warrants are not categorically prohibited by the Oregon Constitution, we consider whether the warrant in this case supports a

finding of probable cause. We review the question whether a warrant affidavit establishes probable cause for legal error. *State v. Webber*, 281 Or App 342, 346, 383 P3d 951 (2016). As search warrants are presumptively valid, it is a defendant's burden to establish that a warrant is defective, and we resolve doubtful cases in favor of upholding the warrant. *State v. Van Osdol*, 290 Or App 902, 907-08, 417 P3d 988 (2018). Our ultimate question is whether, based on the facts contained in the affidavit, a neutral and detached magistrate could conclude "(1) that there is reason to believe that the facts stated are true; and (2) that the facts and circumstances disclosed by the affidavit are sufficient to establish probable cause to justify the search requested." *Castilleja*, 345 Or at 264.

The triggering condition in this warrant—that the CBI engage in a controlled buy under specified conditions prior to the execution of the warrant—was narrowly drawn. *See, e.g.*, *California v. Sousa*, 18 Cal App 4th 549, 560, 22 Cal Rptr 2d 264, 272 (Cal Ct App 1993) (stating that, when affidavit supporting warrant "sets out in detail the anticipated events upon which execution is contingent" and magistrate determines right to search will exist after those events have occurred, the probable cause determination is not improperly delegated to officers). The occurrence of the controlled buy served to corroborate the information provided by several different informants as well as increase the likelihood that the evidence would be there at the time the search was conducted. Seeking a warrant prior to the controlled buy involved a neutral magistrate earlier in the process to review the specifics of the planned transaction, an outcome we typically encourage. *See, e.g.*, *State v. Collicott*, 56 Or App 605, 610, 642 P2d 1187, *rev den*, 293 Or 190 (1982) (striking the fruits of an exigent search that occurred after a controlled transaction because police should have gotten a warrant "before the planned meeting").

Defendant also asserts that the affidavit did not set forth sufficient information to establish probable cause that the triggering condition—the controlled buy—would produce evidence. Defendant argues that federal cases that support the use of controlled buys in anticipatory warrants

are based on either the good-faith exception or on previously-completed controlled buys, so that an incomplete initial controlled buy could not be the basis for an anticipatory warrant in this case.

We conclude that the affidavit contained sufficient information to establish probable cause that the controlled buy would return evidence. According to defendant, none of the averments that either the CBI or the other informants had made were corroborated prior to issuing the warrant or completing the controlled buy. However, extrinsic corroboration is only one of the tools a court may use to assess the credibility and reliability of factual statements asserted in a warrant affidavit. *Castilleja*, 345 Or at 267 (explaining that informant credibility may be assessed from facts and inferences contained within affidavit). Credibility and veracity exist on a scale depending on factors such as whether the informant was involved in the crime, was named in the affidavit, stood to gain from the information, or was merely a witness or victim. *Id.*

In this case, the fact that the CBI was accused of another crime and stood to gain from providing valuable information weighs against his credibility. However, the CBI was identified by name in the affidavit and admitted to his separate criminal activities, both of which tend to enhance credibility. Moreover, the CBI's information was far more than a simple statement that ADD was selling out of the home, instead the CBI explained that he had purchased heroin from ADD "about twice a week for the past four months" and provided information about the quantity and cost of the purchases. Additionally, the CBI's accusation was not the only information in the record that tended to support probable cause; there was information from other informants about ADD dealing heroin in the same specific area of Albany, phone records from drug sales that matched the number ADD had previously provided to police, and real estate records that matched the address to ADD. In effect, police obtained evidence from at least two other unrelated sources about who (ADD), what (heroin dealing), and where (at a specific location in Albany), that tended to support the veracity of the CBI's information.

In consideration of all of the information provided in the affidavit, there were sufficient indicia of credibility of the informants and the reliability of information provided to conclude that there was probable cause that the controlled buy would yield contraband or evidence. Subject to the triggering condition in the affidavit and warrant, there was probable cause to believe that a search of ADD's home would yield contraband or evidence.

Affirmed.

**MOONEY, P. J.,** dissenting.

Anticipatory warrants issue at a point in time when the requesting officer does not have probable cause to search. If the officer had probable cause, there would be no need for that officer to ask for an anticipatory warrant. When a judge issues a regular search warrant, he or she first makes a probable cause determination based on the supporting affidavit submitted by the requesting officer. When a judge signs and issues an anticipatory warrant, that judge agrees to forgo the probable cause analysis at the point where it would ordinarily be done. Rather than waiting to issue the warrant until after the occurrence of events sufficient to support probable cause, the judge who issues an anticipatory warrant effectively delegates that responsibility to the officer in the field by including a condition that will, once it occurs, permit the officer to execute the warrant. Instead of a detached magistrate weighing all of the circumstances then present, an officer involved in the investigation need only answer a single question with a yes or no—did the condition described in the warrant occur? There would be no need to consider the circumstances surrounding the occurrence of the condition, even when the circumstances turn out to be different than what had been predicted at the time the warrant was signed. Probable cause is a complex legal concept carefully examined and described by countless appellate courts and legal scholars across the country. And probable cause cannot easily be reduced to a single question.

I understand that the United States Supreme Court has approved anticipatory warrants under the Fourth Amendment to the United States Constitution. *See United*

*States v. Grubbs*, 547 US 90, 96, 126 S Ct 1494, 164 L Ed 2d 195 (2006). And I appreciate that the majority today has been careful in its attempt to properly cabin its approval of such warrants under Article I, section 9, of the Oregon Constitution. But Oregonians have a long history of providing greater protection of certain fundamental rights under the state constitution than the federal constitution provides. I do not think we should settle for less here. The process matters. Accordingly, in this case, I would agree with defendant that the warrant was invalid and, consequently, that the trial court erred in denying the motion to suppress.

I respectfully dissent.